ELIDA R. MALLORY v. THE OHIO FARMERS' INSURANCE COMPANY.

*Fire insurance—Cancellation of policy—Evidence—Waiver of conditions.*

1. A provision for the cancellation of an insurance policy by the company upon five days' notice to the insured cannot be made operative without such notice, or a waiver thereof.

2. An insurance company claimed, in a suit to recover insurance, that it had ordered its agent to cancel the policy, and give the required notice to the insured, which the agent claimed to have done, but which was denied by the insured. And it is held competent for the insured to show that such notice was not given; and also to show that in fact there had been no surrender or cancellation of the policy, by proof of any act of the company, or of any person through whom the cancellation would ordinarily be effected, or who, upon the theory of the company, was charged with that duty, inconsistent with such cancellation.

3. Certain receipts, to which the attention of a witness had been called for the purpose of comparison of the signature of the receiptor with his alleged signature to an application for insurance, the genuineness of which he denied, were admitted in evidence; and in answer to a proposition of counsel to submit the receipts to the jury, made after the proofs and arguments were closed, the court stated in the presence of the jury that he did not think they ought to be considered by the jury at all, and practically directed the jury not to consider them. And it is held that, even if the receipts were erroneously

admitted, they were not submitted to the jury, and the error was without prejudice.

4. In a suit upon a policy of insurance the defendant produced an application purporting to be signed by the plaintiff's husband, which he denied having signed. Plaintiff then called an expert witness, who testified that the disputed signature was in the same handwriting as the body of the application, and of the policy, which had been shown to him, and upon cross-examination testified that before taking the stand he had compared the application with another policy issued to the insured. Upon redirect examination he was shown both policies, and testified that they were in the same handwriting, and upon recross-examination, in answer to the question if he based his testimony on an examination of the latter policy, said, "I base it on the writing;" whereupon counsel for the defendant moved to strike out the testimony as based upon a policy not in the case, which motion was denied. And it is held that the second policy was introduced into the case by defendant's counsel, and, if both policies were in the same handwriting, it was immaterial with which the witness, when not upon the stand, had compared the disputed signature; and that his statement that he based his testimony upon the handwriting did not necessarily exclude either.

5. A request to charge which assumes the existence of questions of fact which are for the jury to find is properly excluded.

6. In a suit upon an insurance policy which the company claimed to be void for non-payment of the premium, upon which a credit had been given by the agent, the plaintiff claimed that she offered to pay the premium to the agent about the time the credit expired, and that he told her to let it rest until the company had finally concluded as to the cancellation of the policy. This was denied by the agent, but he admitted that he never asked for payment of the premium, and that he assured the insured several times prior to the fire that the property was still insured. And it is held that such assurances from one whose duty it was to collect the premium, and who had given the original credit, amounted to an indefinite extension of time for such payment, and that, before the company can take advantage of the failure to pay, it must show a demand and a failure to respond.

Error to Kent. (Grove, J.) Argued January 8, 1892. Decided February 5, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Butterfield & Keeney,* for appellant, contended:

1. The agent had no power to waive a cancellation of the policy by express agreement; citing *Insurance Co. v. Reynolds,* 36 Mich. 502; *Insurance Co. v. Fay,* 22 Id. 471; and agents of insurance companies are governed by the same rules as other agents, and their admissions or statements not in the line of their real or apparent authority cannot bind the company, and especially is this true where there is nothing that can be treated as an estoppel; citing *Cleaver v. Insurance Co.,* 71 Mich. 414; *Barry v. Insurance Co.,* 62 Id. 424.

2. The opinion of the agent Root as to whether or not the company would pay was clearly incompetent, and could but affect the jury, and its admission was reversible error; citing *Insurance Co. v. Mahone,* 21 Wall. 157; *Packet Co. v. Clough,* 20 Id. 540; *Church v. Insurance Co.,* 28 N. Y. 153, 160.

3. It has been settled ever since the case of *Vinton v. Peck,* 14 Mich. 294–296, that disputed papers which do not belong in the case, and are not involved in the issue, cannot have their genuineness made a question of inquiry in the cause, nor be made a basis of comparison by either the witnesses or the jury; citing *In re Foster's Will,* 34 Mich. 26; *Bank v. Robert,* 41 Id. 710; *Howard v. Patrick,* 43 Id. 128; *People v. Parker,* 67 Id. 224.

4. The court should have charged as requested by defendant, namely, that, if the policy was delivered up with the understanding that it was to be canceled, its force ended, and any statement made by the witness Bodwell afterwards would not bind the company, or give the plaintiff any right of recovery; citing *Insurance Co. v. Reynolds,* 36 Mich. 502; *Iron Co. v. Insurance Co.,* 6 N. Y. Supp. 602; *Walker v. Insurance Co.,* 51 Iowa, 679; *Insurance Co. v. Scurry,* 50 Ga. 48.

5. The jury should have been instructed, as requested by defendant, that if they found that, after the delivery of the policy, it was delivered to Bodwell under the understanding that it might be canceled by the company, and to enable him in that event to secure other insurance on the property, then Bodwell became the agent of the plaintiff, and notice to him of such cancellation was sufficient, and, as it appears that he knew of the taking up and cancellation of the policy, the verdict should be for the defendant; citing *Lipman v. Insurance Co.,*

121 N. Y. 454 (24 N. E. Rep. 698); *Insurance Co. v. Reynolds,*
36 Mich. 502; *Hillock v. Insurance Co.,* 54 Id. 532; *Harrison v.
Insurance Co.,* 30 Fed. Rep. 862.

*Maher & Salsbury,* for plaintiff.

McGRATH, J. Action upon a policy of insurance.
Defense, that the policy had been surrendered and
canceled.

One Root was defendant's agent at Grand Rapids.
Plaintiff owned a farm in an adjoining township, and a
house and lot in the city. One Bodwell solicited the
insurance. Plaintiff did not come in contact with Root
until after the fire. Two policies were issued,—one upon
the farm buildings, and the other upon the city property.
The policies were dated July 3, 1890, and the farm
buildings were destroyed by fire Sunday morning, August
31, 1890. The disputed questions in the case were:

1. Was the policy canceled?
2. If canceled, was plaintiff notified?
3. Was the payment of the premium waived, or its non-
payment excused?

Several errors are assigned upon the admission of testi-
mony as to interviews had with Bodwell, the last of which
was had on Friday before the fire, and as to interviews
with Root, and his conduct after the fire.

Plaintiff did not seek a recovery upon the theory that
a contract once canceled had been revived, but denied
that there had been any cancellation. The policy con-
tained a provision that it might be canceled by the com-
pany upon five days' notice to the insured. In the
absence of this notice, or of a waiver thereof, no act of
the company could invalidate the policy. If the notice
was given at all, it was given through Root and Bodwell.
If it was waived, it was by some conduct with Bodwell.
The company claimed that Bodwell, for Root, and on

behalf of the company, notified plaintiff of the proposed
cancellation of the policy, and that plaintiff delivered
the policy to Bodwell for the purpose of its cancellation.
Plaintiff, on the other hand, claimed that Bodwell did
not notify her that the company had determined to can-
cel the policy, but had twice told her that the company
was considering the question of the cancellation of ten-
ant-farm policies, but had not decided upon it; that the
policy was then delivered to Bodwell to enable him to
reinsure in case the company did at any time conclude
to cancel it; that on several occasions after he received
the policy, and before the fire,—the last time on the
Friday before the fire,—Bodwell had informed her that
the company had not as yet determined to cancel the
policy, that it was still in force, that she was entitled to
five days' notice before cancellation, and that she would
know in time before it was cancelled. This testimony
was competent, not for the purpose of creating a liability
or establishing a new contract, but for the purpose of
showing the continued existence of the old; not as tend-
ing to show the revival of a canceled contract, but as
tending to show that no notice had been given of the
cancellation of the old.

For the same reason the testimony was competent
relative to Root's examinations into the circumstances of
the fire; his notification to plaintiff of the arrival of the
adjuster; his statement that there would be no trouble
about the payment of the loss; his conversation with
plaintiff at his office, in which he told her that he did
not know when the policy had been canceled; his
answer in the affirmative when asked if he did not keep
in his office a record of policies, and their cancellation;
his failure, upon examination in plaintiff's presence,
to find upon his books at that time a record of the cancella-
tion. Root was the company's agent, to whom Bodwell

reported, and through whom the company acted. He claimed upon the trial that the cancellation appeared upon his books. It was insisted by the company that Root was directed to cancel the policy. If it was in fact cancelled, it would be done through Root. He would receive the policy, cancel it, and forward it to the company, and enter the cancellation upon the books in his office. As bearing upon the question whether he had in fact done what it was claimed he had done, it was competent to show acts inconsistent with such conduct. The company contended that the policy had been canceled, and that Root had been ordered to cancel it, and to give notice of its cancellation to the insured. Root claimed that he had done both. Plaintiff insisted that no notice had been given; and it was competent for her to show, not only that no notice had been given, but that in fact there had been no surrender or cancellation of the policy; and this by any act of the company, or any person through whom the cancellation would ordinarily be effected, or who, upon defendant's theory, was charged with that duty, inconsistent with the cancellation. The effective cancellation of the policy depended, not alone upon the direction of the home office to the agent, but upon acts to be performed by the agent, and his conduct in the premises was necessarily the subject of proof; and the evidence tending to show that conduct was subject to the same rules and scrutiny as testimony tending to show any other fact.

Plaintiff's husband, E. W. Mallory, was asked upon cross-examination if he had made a written application for the insurance, and replied that he had not. A written application was produced by defendant, and Bodwell testified that E. W. Mallory had signed it. Mallory was recalled, shown the application, and denied that he had signed it. Other witnesses were called, who testified to

familiarity with Mallory's signature, and gave it as their opinion that the signature to the application was not that of E. W. Mallory. For the purposes of comparison the attention of one of the witnesses was called to certain receipts signed by Mallory, and the receipts were admitted in evidence, but the witness had already testified that the signature to the application was not that of E. W. Mallory; and after the proofs were closed, and after the argument, plaintiff's counsel proposed to submit these receipts to the jury, but the court stated in the presence of the jury that he did "not think they ought to be considered by the jury at all;" and regarding the application the court instructed the jury as follows:

"I do not think the question of whether there was a sufficient application cuts very much of a figure in this case. There was an application. If it was signed by the plaintiff, or by some one chargeable as agent of the plaintiff, then it was in accordance with the contract. If it was signed by the defendant, or some lawfully constituted agent of the defendant, defendant will be estopped from denying that it was an application upon which the contract could rest."

There was no controversy over the receipts; but, even if erroneously admitted, they were not submitted to the jury. The court practically directed the jury that they should not be considered, and the error was without prejudice.

One Hollister was called as an expert, and testified that the signature was in the same handwriting as the body of the application, and—having been shown the policy—that the signature to the application was in the same handwriting as the body of the policy. Upon cross-examination it appeared that the attention of the witness had been called to the matter before he came upon the stand, and that he had compared the application with the policy which had been issued upon the city

property.   Upon redirect examination the witness was shown both policies, and testified that both were in the same handwriting.   Upon recross-examination the witness was asked if he based his testimony on an examination of the policy No. 1,774 (issued upon the city property), and he answered, "I base it on the writing;" whereupon defendant's counsel moved to strike out the testimony of Mr. Hollister as based upon a policy not in the case.   The court declined, and error is assigned upon the refusal.   Hollister's answer was that he based his testimony upon the writing.   Although before taking the stand he had examined policy No. 1,774, he had seen the policy in suit after taking the stand, and testified that the signature was in the same handwriting as the body of that policy, and was afterwards shown both policies, and testified that both were in the same handwriting. The second policy was introduced into the case by defendant's counsel, and, if both were in the same handwriting, it was immaterial with which he, when not upon the stand, had compared the signature; and his statement that he based his testimony upon the handwriting did not necessarily exclude either.

Error is assigned upon the court's refusal to instruct the jury that—

"If you find that, after the execution and delivery of the policy, it was delivered to Bodwell under the understanding that it might be canceled by the company, and to enable him in that event to get other insurance on the property, then Bodwell became the agent of the plaintiff, and notice to him of the cancellation of the policy was sufficient; and, as it appears that he knew of the policy being taken up to be canceled, your verdict in this cause must be for defendant."

This request assumes that the policy had been canceled, and that Bodwell had notice of the cancellation.   Both of these questions were for the jury, and there was no

error in the refusal of the court to give the request as presented.

Several assignments of error are based upon the court's instructions relative to the payment of the premium upon this policy. It is unnecessary to discuss them. The policy contained the following clause:

" If any assessment or installment or any part of the premium for which credit is given be not paid when due, the whole premium shall be considered earned, and be immediately payable, and this policy shall be void so long as any part of such premium remains unpaid."

It was not the non-payment of premiums not yet due, under the terms of the credit given, but the failure to pay them when they became due, that invalidated the policy under this provision. The premium was not paid. Bodwell was an itinerant solicitor. Plaintiff dealt solely with him. No demand was ever made for payment, although Bodwell delivered the policies, and gave the original credit of from three to four weeks. On August 7 a bill was presented by Bodwell for the premium upon the policy issued upon the city property, which was paid. Plaintiff testified that at the same time she offered to pay the premium on the farm policy, but Bodwell told her to let that rest until the company had finally concluded as to the cancellation of that policy. While Bodwell says that he does not think she told him so, he admits that he did not ask for the premium at any time, although he saw her several times; and he further admits that in August he told her that the farm property was still insured, and this assurance was repeated a short time before the fire. He could not give the exact date, but plaintiff fixes it as the Friday before the fire. These assurances, given from time to time, up to within a few days of the fire, by one whose duty it was to collect the premium, and who had given the credit in the first

instance, cannot be regarded as less than an indefinite extension of time; and, before the company can take advantage of the failure to pay, it must, under the circumstances, show a demand made and a failure to respond.

The judgment is affirmed, with costs to plaintiff.

The other Justices concurred.