## Hartford Fire Insurance Co. v. W. L. McKenzie.

1. INSURANCE—*Cancellation of Policies.*—Where an insurance policy provides for its cancellation by the company upon a fixed number of days' notice to the insured, the policy remains in force till the company gives the required notice, unless such notice is waived; and if refunding the premium or a portion of it, be one of the terms upon which the company can cancel the policy, there must be such payment, or a tender thereof to the assured or his duly authorized agent before cancellation is accomplished.

2. SAME—*Cancellation of Policies—Return of Premium.*—When an insurance company seeks to cancel a policy under such a stipulation as the one relied on in this case, the insured does not have to tender his policy in order to entitle him to receive back the unearned premium, but it is for the company desiring cancellation to seek the assured and tender the money to him, and till it does so the cancellation has not been effected.

3. SAME—*Policies Can Not be Canceled Without Notice.*—The act of an insurance agent in cancelling a policy on his books, and writing a

policy in another company and forwarding it as a proposed substitute, is ineffectual to terminate the old policy till notice is given to the assured or his agent.

4. SAME—*Authority of an Insurance Agent.*—It is not within the scope of the authority ordinarily conferred upon an insurance agent to deliver a policy after the property has been destroyed by fire.

5. SAME—*Cancellation, as Affecting other Companies.*—In a suit on an insurance policy providing that it shall be void if the insured has any other insurance on the property covered by the policy, defended on the ground of the existence of other insurance, the question is, what was the condition of such alleged insurance at the time of the fire. After the fire the insured could not give any consent or waive any conditions so as to make good as to the defendant company, an intended cancellation of such insurance which had not been carried into effect when the property was burned.

6. AGENCY—*Contracts Made by an Agent Representing Both Principals Void Until Ratified.*—Where a person who is employed as agent by two principals makes a contract between them, the contract is not binding until approved by both parties with knowledge of the facts.

Assumpsit, on an insurance policy. Appeal from the Circuit Court of Whiteside County; the Hon. J. C. GARVER, Judge, presiding. Heard in this court at the December term, 1896. Reversed. Opinion filed June 26, 1897.

R. W. BARGER, attorney for appellant.

The plaintiff only asked for $1,500 insurance, and this amount of insurance he had under the Hanover policy, which was in his possession for more than three months at the date of the loss, and which policy was then in full force and effect and uncanceled, and remained in his possession really until June 4, 1895. 1 Woods on Fire Insurance, 288, 290, 291 and 289; 1 May on Insurance, Section 574; Commercial Union Assur. Co. v. State, 15 N. E. Rep. 518, 17 Ins. Law Journal, 333; Hollingsworth v. Germania Fire Ins. Co., 45 Georgia, 294, 12 American Reports, 579; Poor v. Hudson Insurance Co., 9 Ins. Law Jour. 428.

The Hartford policy was not delivered, nor asked for, nor known of, until long after the loss had occurred, and was then delivered as a substitute, and was therefore void. Wilson v. New Hampshire Fire Ins. Co., 5 N. E. Rep. 818; 16 Ins. Law Jour. 408; Stebbins v. Lancashire Ins. Co., 60 New Hampshire, 65; 13 Ins. Law Jour. 698; Lancashire

Fire Ins. Co. v. Nill (Penn.), 16 Ins. Law Jour. 309; Massasoit Steam Mill Co. v. Western Assurance Co., 125 Mass. 110, 7 Insurance Law Journal, 750; London & Lancashire Fire Ins. Co. v. Turnbull, 86 Ky. 230, 17 Ins. Law Jour. 833.

Even if Mr. Underwood was the agent of Mr. McKenzie, to procure him insurance and to keep him insured, which he was not, then he was the agent of both parties to this alleged contract under the Hartford Fire Insurance policy, and he could not, therefore, make a contract binding on either without the approval of both. Empire State Ins. Co. v. American Central Ins. Co., 34 N. E. Rep. 200; 138 N. Y. 446, 22 Ins. Law Jour. 626; N. Y. Central Ins. Co. v. National Protection Ins. Co., 14 N. Y. 85; 4 Bennett's Fire Insurance Cases, 96.

WHITE & SHELDON and H. C. WARD, attorneys for appellee.

Where an insurance agent is authorized by a person to write insurance upon his property, and to keep it insured, and such agent writes insurance, he may afterward, for the assured, accept notice of cancellation from the company and write the insurance in another company; and in case of fire the latter company will be liable even though the assured has received no notice of the cancellation before the fire and has the policy of the first company in his hands at the time of the fire. Buick v. Mechanics Insurance Co., 61 N. W. Rep. 337; Schauer v. Queen Insurance Co., 60 N. W. Rep. 994; Dibble v. Northern Assurance Co., 37 N. W. Rep. 704; Arnfeld v. Guardian Assurance Co., 34 Atlantic Rep. 580; Germania Fire Insurance Co. v. Shoemaker, 22 Weekly Law Bulletin, 315.

The duties of such an agent to the insurance company and to the insured are in no sense repugnant. Schauer v. Queen Insurance Co., *supra;* Stone v. Franklin Insurance Co., 12 N. E. Rep. 45.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

This was a suit upon an insurance policy brought by McKenzie against the Hartford Fire Insurance Company

to recover for the destruction by fire of a mill and machinery therein at Tampico, Whiteside county.   The declaration contained a special count on the policy and the common counts, and defendant pleaded the general issue.   There was a verdict and judgment for the plaintiff, and defendant prosecutes this appeal therefrom.

The Hartford policy was dated April 18, 1895.   The fire occurred April 19, 1895, at seven o'clock P. M.   McKenzie had never personally applied or paid for any insurance in the Hartford company, and at the time of the fire he had no knowledge that any such application had been made or any such policy made out.   At the time of the fire the Hartford policy was in the office of Underwood & Co., insurance agents at Sterling, and in an incomplete condition, and McKenzie then held a policy in the Hanover Insurance Company, insuring the same property from December 28, 1894, to December 28, 1895, for which he had paid a premium of $45.   The amount insured by each policy was $1,500, and McKenzie had never applied for more than $1,500 insurance.   He supposed he was insured in the Hanover, and had never heard the Hartford mentioned in connection with his property till the day after the fire.   The Hartford policy contained the following stipulation: "This entire policy  *  *. *  shall be void if the insured now has  *  *  *  any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."   The Hartford company claims that the Hanover policy was in force at the time of the fire, and that by reason of the foregoing stipulation the Hartford policy was void.   It also claims that the Hartford policy had not been delivered when the property burned.

The Hanover policy had been duly issued and paid for, and was in the possession of the assured, and was relied upon by him at the time of the fire; and it was then in force unless it had been duly canceled.   That policy contained this stipulation:   "This policy shall be canceled at the request of the insured, or by the company, by giving five days' notice of such cancellation.   If this policy shall

be canceled as hereinafter provided, or become void, or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the *pro rata* premium." Where there is in an insurance policy such provision for the cancellation of the policy by the company upon a fixed number of days' notice to the insured, the policy remains in force till the company gives the required notice, unless such notice is waived. If refunding the premium, or a portion of it, be one of the terms upon which the company can cancel the policy, there must be such payment, or a tender thereof, to the assured or his duly authorized agent before cancellation is accomplished. 2 Beach on Insurance, Sec. 628; May on Insurance, Secs. 67, 69, 574; 1 Wood on Insurance, Sec. 113; Mallory v. Ohio Farmers Ins. Co., 90 Mich. 112. Where the company seeks to cancel the contract under such stipulation as is above set out, the insured does not have to tender his policy in order to entitle him to receive back the unearned premium, but it is for the company desiring cancellation to seek the assured and tender the money to him, and till it does so the cancellation has not been effected. Peoria M. & F. Ins. v. Botto, 47 Ill. 516; Ætna Ins. Co. v. Maguire, 51 Ill. 342; 1 Wood on Insurance, Sec. 113; 2 Beach on Insurance, Sec. 827.

The material inquiry is whether, within the rules above stated, the Hanover Insurance Company had canceled its policy upon appellee's property before it was destroyed by fire. Underwood & Co., of Sterling were agents for about twenty insurance companies, including the Hanover and the Hartford. They had written the Hanover policy on McKenzie's property. On April 17, 1895, Underwood received notice from the Hanover company that it desired to cancel this policy. He took no action thereon till the evening of April 18th, when he noted on the Hanover register in his office that the policy was canceled, partially made out a daily report to the Hartford company, showing

the property insured in that company for $1,500 from April 18, 1895, to April 18, 1896, stating amount, premium and rate, and directed his clerk to complete the report and mail it to the Hartford office in Chicago next day. Underwood also wrote a letter the evening of the 18th to Pierce (who solicited insurance for him at Tampico, and who had procured this insurance for him), telling him of the cancellation of the Hanover policy and of the reinsurance in the Hartford, and asking Pierce to get the Hanover policy from McKenzie. Pierce received this letter on the 19th, a short time before the fire, and he did not notify McKenzie of it until the day after the fire. Underwood, also on the evening of the 18th, signed a blank policy in the Hartford (being the policy here sued on), and directed his clerk to fill that out the next day with the insurance for McKenzie, intending to complete and attend to the policy himself on the 20th. Underwood, also on the evening of the 18th, credited the Hartford company with one year's premium on the policy as paid by McKenzie, and in the private account of McKenzie with Underwood & Co. charged McKenzie with one year's premium in the Hartford and credited him with the unearned premium under the Hanover policy, thus, so far as mere bookkeeping could do it, paying the premium to the Hartford company and making McKenzie the debtor of Underwood & Co., for the difference between the premium in the Hartford and the unearned premium in the Hanover. Underwood went to Chicago on the morning of the 19th and returned to Sterling at nine P. M., the same day, two hours after the fire. He found the new policy incomplete in not having the gasoline permit attached, which was essential, as the mill was operated by a gasoline engine, and the agent knew it. On the morning of April 20th, but before he heard of the fire, he attached that permit and completed the policy. At the time of the fire, no notice had been served upon McKenzie that the Hanover company had elected to cancel its policy, and the unearned premium had not been paid or tendered to him. He had not in any way waived compliance by the company

with the stipulations of the policy in regard to cancellation. We think it is clear no cancellation of the Hanover policy was effected by virtue of the facts above stated.

It is insisted McKenzie had made Underwood his agent, and that by virtue of the authority McKenzie had given him Underwood could accept notice and could waive notice of the cancellation, and had authority to procure new insurance for McKenzie, and that notice to Underwood was therefore notice to McKenzie; that the acts of Underwood in entering a cancellation of the old policy on the Hanover register, in issuing a new policy in the Hartford, and in crediting McKenzie with the Hartford policy as paid, were binding upon McKenzie as the acts of his agent, and that by those acts, Underwood, for McKenzie, consented to immediate cancellation, waived the five days' notice and received the unearned premium, and therefore the Hanover policy was duly canceled on the 18th, and the policy in the Hartford was valid. This contention rests upon the conversation between Underwood and McKenzie in the presence of Pierce at Tampico, when McKenzie first ordered insurance on this property. These three men were examined several times at the trial as to what was said on this subject in that conversation. To here repeat their testimony would unduly extend the limits of this opinion. We have carefully examined and considered it, and are of opinion it does not warrant the conclusion that Underwood had any authority to act for or represent McKenzie in any respect in regard to the cancellation of any policy. In this conversation at Tampico, Underwood told McKenzie the risk was hazardous and undesirable; that many companies would refuse to carry it; that before he could bind any company upon it he would have to consult such company; that he would submit the application to one company and if it refused to insure he would submit it to another, and so on till, if possible, he got some company to carry it; and that if he got some company to issue a policy and that company should afterward cancel it, as sometimes occurred, then he would try to put McKenzie in another company. McKenzie testifies he then

told Underwood that if the company which did insure him should cancel the policy, to write him up in another company and he would pay whatever it cost. Underwood and McKenzie had never done business with each other before. They were introduced to each other at the time of this conversation. 'They had but this one transaction. Nothing was said between them to the effect that if any company wished to cancel a policy on this property, Underwood should or could act for McKenzie, or receive or waive notice. The most that can be said is that if a policy was canceled, Underwood had directions to try to get McKenzie insured in some other company. His authority did not include the cancellation. He was not authorized to do, suffer or consent to any act in regard to cancellation, but only to act after cancellation had been effected. In this respect this case differs from the cases cited by appellant. In this case, therefore, nothing had been done by the Hanover company at the time of the fire toward cancellation. The determination of officers of that company at the home office to cancel the policy, accomplished nothing toward that end. Their ,letter to their own agent telling him they desired to cancel the policy was not a compliance with any part of the stipulations relating to cancellation embodied in the policy. The Hanover company gave McKenzie no notice. It tendered him no unearned premium. Indeed it could not have canceled the policy and escaped liability after its officers wrote to their agent, for the fire occurred less than five days thereafter.

It is argued, these stipulations as to cancellation were for the benefit of McKenzie only, and were not available to the Hartford company, and that if McKenzie afterward chose to waive these conditions and treat the Hanover policy as canceled, the Hartford company could not be heard to complain thereof. The real question is, what was the condition of the insurance at the time of the fire; had the Hanover policy then been canceled? Neither party could afterward change the conditions existing at the time of the fire so as to afterward create a liability by the opposite

Hartford Fire Ins. Co. v. McKenzie.

party where none existed at the moment of the fire. At any time before the fire McKenzie could have waived each and every of these conditions, and consented to treat the Hanover policy as canceled. But by the fire and the acts of Underwood, the Hartford company became interested in the question whether the Hanover policy had been canceled before the fire. That question was to be determined by the facts as they then existed—by what had theretofore been done. McKenzie could not, two days later, at Sterling, give any consent, or waive any conditions, so as to then make good an intended cancellation which had not been carried into effect when the property was burned. We are of opinion the Hanover company had taken no steps to comply with the stipulations of its policy as to cancellation, and that there had been no waiver of those conditions, when the fire occurred, and that the Hanover policy was then in full force, and that because it was in force, the Hartford policy was void by virtue of its own provisions above recited. We also hold that at the time Underwood made the notations for the Hartford policy, and signed the policy in blank, and undertook to so transfer debits and credits as to pay the Hartford company for its policy, he was acting without authority from McKenzie, and that the Hartford policy had not been ordered, and was not paid for or delivered. The transaction between Underwood and McKenzie at Sterling two days after the fire, when Underwood persuaded McKenzie the Hanover policy had been canceled, and the Hartford company was liable to him for the loss, and McKenzie gave up the Hanover policy and took the Hartford policy, can not avail here to determine which policy was in force at the time of the fire. It is not within the scope of the authority ordinarily conferred upon an insurance agent to deliver a policy after the property has been destroyed by fire. The act of an insurance agent in canceling a policy on his books, and writing a policy in another company and forwarding it as a proposed substitute, is ineffectual to terminate the old policy till notice to the insured or his agent. Stebbins v.

Lancashire Ins. Co., 60 N. H. 65; Massasoit Steam Mills v. Western Assurance Co., 125 Mass. 111; Wilson v. N. H. Fire Ins. Co. (Mass.), 5 N. E. Rep. 818.

But if it were established Underwood was the agent of McKenzie to accept or waive notice of cancellation and to reinsure, still we are of opinion that under the special facts of the case the Hartford company would not be bound. Underwood would then be the agent both of McKenzie and the Hartford company. The property was hazardous—was such a risk as many companies would refuse—and Underwood knew it. He had told McKenzie in December, that before he could bind any company on it he would have to consult its officers. He did not think it best to write a policy at first, but prepared an application and forwarded it to one company, and it was rejected; then he sent an application to a second company, and it also was rejected; then he wrote a policy in the Hanover, but did not deliver it till he got word that it was accepted. Now the Hanover had written that it desired its policy canceled. Thereupon Underwood wrote, or partially wrote, the Hartford policy here sued on, and notified that company of the details of the policy, but not of the existence and attempted cancellation of the Hanover policy. We are of opinion that if he was the agent both of McKenzie and the Hartford company, as here contended, then the contract he so attempted to make between them was not binding till approved by both parties with knowledge of the facts. London & L. F. Ins. Co. v. Turnbull, 86 Ky. 230; Empire S. Ins. Co. v. Am. Cent. Ins. Co., 138 N. Y. 446.

Instruction numbered 1½ offered by defendant, stated the law on this subject correctly, and it was error to refuse it.

Other defenses against this policy are argued, but their consideration is rendered unnecessary by the conclusions already reached. Under the evidence the court is of opinion appellee has no cause of action against the Hartford company, and the judgment of the court below is therefore reversed.

Finding of facts to be embodied in the judgment:

The court finds that the policy sued upon was not ordered or paid for by, or delivered to, plaintiff before the destruction of the property by fire; that plaintiff at the time of the fire had no knowledge of any steps taken to insure him in the appellant company; that the policy sued upon had not been completed at the time of the fire; that at the time of the fire appellee had in his possession a policy of insurance upon said property in the Hanover Insurance Company, upon which alone he relied as his security against loss by fire; that he had never been notified of any purpose by the Hanover company to cancel said policy; that there was then unearned premium theretofore paid by appellee upon said Hanover policy which had not been returned to him at the time of the fire; that the stipulation for cancellation contained in said Hanover policy had not been complied with at the time of the fire; and that Underwood was not the agent or representative of appellee in any matter relating to the cancellation of the Hanover policy.