Andrew Peterson, for the use of, etc., v. The Hartford Fire Ins. Co.

1. Insurance—*Tender of Unearned Premiums on Cancellation of Policies.*—Under a policy of insurance providing that the company may cancel its policy by giving five days' notice, the tender of the unearned premium with the notice of cancellation is necessary.

2. Same—*No Cancellation Without the Tender of the Unearned Premiums.*—Under a policy of insurance providing that the company may cancel its policy by giving five days' notice, a tender of the unearned premium is a condition precedent, and until it is done, there can be no cancellation.

3. Same—*Cancellation of Policies by the Insurer.*—If the refunding of the premium, or a portion of it, by the insurer, is one of the terms upon which it may cancel the policy, such terms must be complied with before the cancellation is accomplished.

4. Same—*Consent of a Mortgagee Not Sufficient.*—The consent of a mortgagee of the insured premises to the cancellation of the policy, without the knowledge of the insured, is ineffectual, and can not deprive him of his rights.

5. Same—*Effect of Mortgagee's Claims.*—A clause in a policy of insurance to the effect that the loss, if any, shall be payable to the mortgagee, gives him a right to bring a suit in the name of the insured for his use, but gives him no right to consent to a cancellation of the policy before a loss occurs.

Assumpsit, on an insurance policy.   Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1899.   Reversed and remanded with directions.   Opinion filed February 13, 1900.

Mr. Justice Horton not concurring.

Statement of Facts.—March 10, 1890, Andrew Peterson and wife gave the Masonic Building, Loan & Savings Association a mortgage on lot 68, block 22, Chicago and Calumet Canal and Dock Company's Subdivision, Hege-

wisch, Illinois, to secure his bond of that date given to secure a loan of $2,000 on twenty shares of its stock owned by him as one of its members. Said bond and mortgage provided that Peterson should keep all buildings on the premises insured, and make the loss, if any, payable to the association as its interest might appear.

There was $2,000 due and unpaid on said bond and mortgage at the time of the trial. March 23, 1893, the Hartford Fire Insurance Company, by William M. Martin, its agent at Hegewisch, issued to and in the name of Peterson its policy of insurance whereby it insured the dwelling house situated on said premises against loss by fire to the amount of $1,700 for the term of three years from March 24, 1893, for a premium of $18, which sum Peterson then paid to Martin and took his receipt, as such agent, therefor.

Peterson instructed Martin to deliver the policy to said association, who received and held it as additional security for said loan until August 8, 1893, when Martin (who had failed to pay said premium to the defendant and who had been ordered by the defendant to cancel said policy) went to the office of the association and told its secretary, to whom he had originally delivered the policy, that the Hartford Company had ordered said policy canceled and asked him for it, and, upon receiving it from the secretary, delivered it to the Hartford Fire Insurance Company, and on the back of it, made this memorandum: "Canceled and issued back August 8, 1893."

The Hartford Fire Insurance Company never in any way notified Andrew Peterson of their intended cancellation of said policy, nor that they had canceled it, until after the destruction of said dwelling, and they never returned or tendered any part of the premium that he had paid them for the policy.

August 26, 1893, said Martin, as agent of the Fireman's Insurance Company, issued and delivered to said secretary a policy of insurance whereby the latter company purported to insure Andrew Peterson against loss by fire to the amount of $1,700 on said dwelling house for the term of

three years from August 26, 1893, the premium on which policy was never paid for by Peterson or said association, and Peterson never ordered the policy and never knew it had been issued until after the destruction of the house by fire.

October 5, 1893, said house, which was then worth $1,700 and still owned by said Peterson, was, without his fault, totally destroyed by fire, and Martin, the agent that issued said policies, was present at the fire.

October 17, 1893, Peterson signed and served the following written notice upon the Hartford Fire Insurance Company :

" Please take notice that the dwelling situated on lot 68, block 32, Calumet and Chicago Canal and Dock Company's Addition to Hegewisch, was totally destroyed by fire October 5, 1893, at 11 o'clock P. M., insured in your company as policy 958, issued by your agent, W. M. Martin, March 24, 1893. My notice would have been given you earlier but that your agent, W. M. Martin, was notified and was present at the fire.                Andrew Peterson."

On the back of which notice one Taylor, the agent of said company, wrote, and Peterson signed, the following :

"Chicago, October 17, 1893.

Now comes Andrew Peterson and states that the within and foregoing statement is not correct, and was signed by him, not knowing that he claimed insurance in the Hartford Insurance Company on his dwelling, and further states that he did not have any insurance on his dwelling in the Hartford, but did have a policy on said dwelling in the Fireman's Insurance Company of Chicago.

(Signed)    Andrew Peterson."

" Subscribed and sworn to before me this 17th day of October, A. D. 1893.        W. H. Taylor, N. P."

It was not admitted as a fact that Peterson swore to said statement.   He testified that he did not swear to it, and did not read it or have it read to him.

At the time said notice was served and afterward, said company denied all liability for loss under said policy, and for that reason no formal proof of loss was made thereunder.   Neither said association nor any of its agents knew

of, authorized or ratified the statement signed by Peterson on the back of said notice.

Each insurance company claimed that the other company was the only one legally responsible for said loss, and each refused and failed to pay any part of the same.

On the same day that the suit was commenced against the Hartford Fire Insurance Company, suit was also brought in the same court in the name of the same plaintiff for the use of the same beneficiary against the Fireman's Insurance Company for the recovery of insurance under its policy for loss on the same house, which latter suit is still pending and undetermined.

The secretary of said association never received any direction from the board of directors, or president or other officer, to surrender or deliver the Hartford policy or to accept the Fireman's policy.

The slip attached to said Hartford policy permits other insurance, and said policy contains the usual printed clauses, and among others the following:

" This policy shall be canceled at any time at the request of the insured, or by the company giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rates, except that when this policy is canceled by this company by giving notice it shall retain the *pro rata* premium.

If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance, relating to such interest as shall be written upon, attached or appended hereto.

This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property. * * * *"

Attached to said policy was a building association mortgage indemnity clause in part as follows:

"To be attached to policy No. 958 of the Hegewisch, Ill., agency, and to be construed as originally constituting a part thereof, issued to Andrew Peterson.

It is hereby further agreed, that any loss or damage that may be ascertained and found to be due the assured, or to his heirs, under this policy, or which might be due, except for acts of forfeiture as hereinafter mentioned, shall be payable for his account to the Masonic Building, Loan and Savings Association.

It is also stipulated that this insurance, as to any claim that the said association or the said assured, as long as he is a member of said association, may have in the proceeds thereof, under the foregoing agreement, shall not become void by reason of any act or neglect of the mortgagor or owner of the property insured.  *  *  *

*Provided*, that if the mortgagor or owner shall neglect or refuse to pay any premium on this policy when due, then the said association shall pay the same on demand;  *  *  *  the company reserving the right to cancel the policy at any time on the terms in said policy provided, on giving said association ten days' notice of their intention so to do. The foregoing stipulation, however, shall not be held to modify the terms of contribution provided in the printed conditions of this policy, in case of other insurance on the same policy.

Dated March 24, 1893.

Wm. M. Martin,
Agent Hartford Fire Insurance Company."

A similar mortgage clause was attached to said Fireman's policy.

D. F. Flannery, attorney for appellant.

Bates & Harding, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the court.

This was an action of assumpsit brought by the appellant against the appellee, to recover on the policy of insurance issued by the appellee, mentioned in the foregoing statement of facts.

The case was tried by the court without a jury upon agreed facts of which the foregoing statement is the sub-

stance, and the issues being found for the appellee, a judg-
ment followed against appellant for costs.

There is no question of the effectiveness of the policy
issued to appellant by appellee, and the first inquiry that
arises is, was such policy canceled.

By its terms the policy might be canceled at any time at
the request of the insured, " or by the company giving five
days' notice of such cancellation." There is also the provi-
sion that when the " policy is canceled by giving notice,
it shall retain only the *pro rata* premium."

There is no pretense that the five days' notice of intended
cancellation was given by the company, or that any part of
the premium paid by Peterson was returned to him.

" We think it is incumbent on every insurance company
acting under such a clause as in this policy (in effect the
same as here) to tender the unearned premium with the
notice of cancellation. The tender must be held a condition
precedent   *   *   *" Peoria M. & F. Ins. Co. v. Botto, 47
Ill. 516.

" There can be no cancellation unaccompanied by a
return of the unearned premium.   *   *   * Until that is
done, there can not be   *   *   * a cancellation." Ætna
Fire Ins. Co. v. Maguire, 51 Ill. 342.

" If refunding the premium, or a portion of it, be one of
the terms upon which the company can cancel the policy,
there must be such payment, or a tender thereof, to the
assured or his duly authorized agent, before cancellation is
accomplished." Hartford Fire Ins. Co. v. McKenzie, 70
Ill. App. 615.

" When the policy provides that the   *   *   * insurer may,
any time, at its option, cancel it, on giving notice to that effect,
and paying a ratable proportion of the premium for the
unexpired term, payment of the unearned premium is essen-
tial to absolve the company from liability under the policy;
and although the policy has been surrendered to the com-
pany, yet if the unearned premium has not been paid until
after a loss, the company is liable for the loss, and this, even
though the assured after the loss, but in ignorance of it,
accepts the balance of premium due him for the unexpired
term.   *   *   *

The policy is not canceled until the unearned premium is
actually received by the assured or his agent; and if, after
he receives notice to return the policy for cancellation, he

sends it to the insurer, but before he receives the return premium a loss occurs, the insurer is liable therefor." Wood on Fire Ins., Sec. 113.

The circumstance that the mortgagee, for whose use this suit was brought, consented to the cancellation of the policy, can not be held to deprive the assured of his right. Peterson, the assured, had no knowledge or notice of the action of the mortgagee, or the insurance company, until after the fire had occurred and his property became destroyed, and it would be a most harsh doctrine to hold that somebody else might surrender his rights without knowledge on his part or notice of any kind to him.

The contract of insurance was with Peterson. His rights were fixed by that contract, and he could not be deprived of them without his consent, except in the manner provided by the contract.

The mortgage clause became a part of the contract, but its effect, so far as questions here involved are concerned, was no more than to give to the mortgagee the right to receive from the insurance company whatever loss or damage Peterson might sustain under the policy. No right existed in the mortgagee under the mortgage clause to cancel the policy, and thus abrogate and destroy Peterson's contract with the insurance company, and any attempted accomplishment of such result by the mortgagee was entirely ineffectual as against Peterson.

The policy not being rightfully canceled, it remained in full force and effect, and was in law, at the time the fire occurred, just as effectual to maintain a suit upon as though it had always remained in Peterson's hands. And such suit was properly brought in the name of Peterson for the use of the mortgagee, to whom the loss was made payable for Peterson's account. Although it be that both Peterson and the mortgagee had separate insurable interests in the property covered by the policy, yet, the only interest that was insured being that of Peterson, the mortgagor, a suit in his name for the use of the mortgagee, to whom the loss was made payable, may be properly maintained. By the terms of the mortgage clause the loss was made payable to

the mortgagee, and gave the benefit of the policy to the mortgagee. Hence, it was proper to sue in the name of the owner of the legal title for the use of the beneficiary. Illinois Fire Ins. Co. v. Stanton, 57 Ill. 354.

What the effect may be upon the Fireman's Insurance Company of the policy that was issued by it upon the premises without the knowledge of Peterson, we need not decide nor discuss; but that it was without effect as between the parties to this suit, we have no doubt. The facts concerning the issue of that policy and the conduct of Peterson in regard to it are set forth in the statement of agreed facts, and do not require special comment at this time.

In our view, Peterson did nothing in connection with that policy that makes it inequitable, or contrary to any recognized rule of law, for him to recover from appellee the loss that it agreed to protect him against, and we therefore will reverse the judgment of the Circuit Court and remand the cause, with directions to that court to enter judgment in favor of the appellant and against the appellee for $1,700, with lawful interest from December 5, 1893, the date when said loss became payable. Reversed and remanded with directions.

Mr. Justice HORTON does not concur.