ALLEN *v.* PATRONS' MUTUAL FIRE INSURANCE COMPANY OF MICHIGAN, LIMITED.

1. INSURANCE—MUTUAL FIRE INSURANCE ASSOCIATIONS — BENEFIT POLICY—CONDITIONS PRECEDENT TO ACTION.

Insured, under the provisions of a mutual policy, of which the articles of association of the company were a part, requiring the insured to refer the matter to a board of arbitration within the society, must, as a condition precedent to his right of action, exhaust the remedies within the order.[1]

[1] Arbitration as condition precedent to action on insurance policy, see note in 15 L. R. A. (N. S.) 1055.

2. SAME—CANCELED POLICY—LIABILITY FOR LOSS.

In an action brought on a policy of insurance issued under insured's first application, but succeeded by a second policy, issued by the association in pursuance of his second application, on the day before the fire, when the first policy was canceled on the books of the association, the second not being received by the insured until several weeks after, his remedy is on the second policy, not on the first, under which he had not exhausted his remedies within the order.

3. SAME—JUDGMENT—COSTS.

A judgment conditioned upon plaintiff's acceptance is ordered to be entered for plaintiff for the amount of loss under the second policy, whereon defendant admitted liability; but costs of both courts are awarded to defendant.

Error to Arenac; Sharpe, J. Submitted February 6, 1911. (Docket No. 131.) Decided March 13, 1911.

Assumpsit by George Allen against the Patrons' Mutual Fire Insurance Company of Michigan, Limited, on a policy of insurance. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed and judgment reduced.

*G. C. Leibrand* and *E. C. Chapin,* for appellant.

*B. J. Henderson,* for appellee.

On October 16, 1908, plaintiff made application for insurance in defendant company, and on October 19, 1908, policy No. 9,747 was issued and delivered to him. By the terms of this policy the value of plaintiff's barn was fixed at $800, and the amount of the insurance thereon at $500. The insurance upon the contents thereof was fixed at $200. On July 31, 1909, the property of the plaintiff was reinspected by the defendant, and plaintiff made a second application. In this application the value of the barn was placed at $550, and insurance thereon was requested in the sum of $250. Insurance upon the contents of the barn was asked in the sum of $400. A second policy (No. 12,276) was written on this application, in which the values and insurance of the barn and contents

conform to the application. This policy bears date August 19, 1909, and the books of defendant company show a cancellation of the former policy upon that day. The record does not disclose upon what day the new policy was mailed to plaintiff, but he admits having received it on September 10, 1909. In the meantime and on August 20th, plaintiff's barn and the contents thereof were destroyed by fire. Within two or three days after the fire, plaintiff notified John Donnelly, local director of the grange, of his loss. On September 23, 1909, plaintiff signed and swore to a notice of loss addressed to defendant, in which appears the following:

"You are hereby notified of loss by fire, lightning, of the property hereinafter described, and insured in your company under policy No. 12276, said loss occurring on the 20th day of August, 1909."

Upon the same day, the adjusting board made the following report:

"Blank for Adjusting Loss.
"Sterling, Mich., September 23, 1909.
"The undersigned members of adjusting board appointed to adjust the loss of George Allen insured in the Patrons' Mutual Fire Insurance Company of Michigan, Limited, under policy No. 12276 submit the following statement of same:

"Cause of loss, unknown.
"Date of loss, August 20, 1909.
"The property destroyed was owned as follows: By George Allen. There was no other insurance, except— none.
"The property destroyed was insured in the Patrons' Mutual Fire Insurance Company of Michigan, Limited, as follows: Barn No. 1, $250. Contents, $400.
"The loser's dues were paid in Melita Grange, No. 1096, at time of loss to the 31st day of December, 1909.
"The property loss was situate on Sec. 29, township of Clayton, county of Arenac.

| | | | |
|---|---|---|---|
| Loss on real | $550 00 | Liability of company | $250 00 |
| Loss on personal | 263 90 | Liability of company | 197 92 |
| Total loss | 813 90 | Liability of company | 447 92 |

"Remarks: We think the barn was worth $550 and believe that Bro. Beaver gave $350 as the amount insured by him to Bro. Allen.

"This adjustment is subject to modification by the Secretary to make it conform to the rules and practices of the Company.

[Signed]                    "Adjusting Board,
                             "PETER GILBERT,
                             "ALBERT CHRISTIE,
                             "JOHN DONNELLY.

"I hereby accept this adjustment as satisfactory to me.

"_____, Loser."

Plaintiff refused to accept this adjustment, for the reason that it was claimed by him that his application should have been (and when he signed it he believed it was) for $350, instead of $250, insurance upon the barn. He was satisfied with the adjustment so far as it related to personal property. No claim was ever made by the plaintiff against defendant for loss under the old policy (No. 9,747), though this suit is based upon an alleged liability thereunder.

The policy contract provides that the articles of association of defendant are a part of the contract of insurance. Those articles contain the following:

"In case of a loss the president and the secretary shall select three persons to serve as an adjusting board, one member of which shall be from the grange to which the losing member belongs, and one from the board of directors, and the other one from an adjoining or nearby grange; the duties of which board shall be to adjust the loss, except as hereinafter provided. In case the loser of the property is not satisfied with the amounts or valuations, in whole or in part, fixed by said adjusting board, he shall appeal to the board of arbitration, which board shall consist of the president and secretary and a member of the local grange to be selected by them. Said board shall try, hear and decide upon the justice and validity of such claim, and such decision shall be final and binding upon such claimant and such company, and no suit at law or equity shall be commenced or maintained by any such loser or beneficiary to fix such amounts or valuations.

The expense of such appeal and of the arbitration board shall be borne equally by the party appealing and the company."

After plaintiff had been sworn and it became apparent that no claim had been made under the policy sued upon, and no adjustment made thereunder nor appeal taken therefrom, as provided by the articles of association, defendant moved for a directed verdict, because plaintiff had failed to comply with the rules laid down by the articles of association, which motion was denied. At the close of the testimony, a second motion was made by defendant, upon the ground that, at the time of the fire, the second policy was in force and the first canceled. This motion was likewise denied. The court held, as a matter of law, that the first policy was in force and permitted the jury to fix the amount of plaintiff's loss upon the barn thereunder. This loss was fixed by the jury at $500, which, together with the conceded loss upon personal property, $197.92, made up the verdict of $697.92. Defendant has removed the case to this court for review.

Brooke, J. (*after stating the facts*). Can plaintiff maintain his action upon a policy without first complying with the rules of the defendant association, of which he was a member? Those regulations are plain and specific, and the right of the parties to contract with reference thereto is undoubted. The reasons which impel members of a mutual company to make such a contract with each other are obvious. It may be supposed that by reason thereof losses are settled more equitably and expeditiously and needless litigation avoided. Such contracts have been frequently upheld by this court. *Van Poucke* v. *St. Vincent de Paul Society*, 63 Mich. 378 (29 N. W. 863); *Canfield* v. *Great Camp K. O. T. M.*, 87 Mich. 626 (49 N. W. 875, 13 L. R. A. 625, 24 Am. St. Rep. 186); *Hembeau* v. *Great Camp K. O. T. M.*, 101 Mich. 161 (59 N. W. 417, 49 L. R. A. 592, 45 Am. St. Rep. 400); *Fillmore* v. *Great Camp K. O. T. M.*, 103 Mich.

437 (61 N. W. 785); *Raymond* v. *Insurance Co.*, 114 Mich. 386 (72 N. W. 254); *Russell* v. *Benefit Association*, 116 Mich. 699 (75 N. W. 137); *Harris* v. *Typographical Union*, 144 Mich. 422 (108 N. W. 362); *Conley* v. *Supreme Court I. O. F.*, 158 Mich. 190 (122 N. W. 567); *Larkin* v. *Modern Woodmen of America*, 163 Mich. 670 (127 N. W. 786). If plaintiff had made his claim under policy No. 9747 (the policy under which he brought suit), an adjustment might have been reached satisfactory to both parties. At any rate, he cannot avail himself of his legal remedy until he has exhausted the remedy provided by the reasonable rules and regulations of his society.

Was policy No. 12,276 in force at the time of the fire? The by-laws of defendant provide:

"SEC. 22. All policies shall be signed by the president and the secretary, and shall take effect at twelve o'clock noon on the day of the date of the issue of the policy."

There is no dispute upon this record that the policy No. 12,276 was dated and signed August 19, 1909, the day before the fire. The records of the society, and they are not questioned, likewise show that the earlier policy was canceled on that day and the new policy put in force. This new policy was written and issued exactly in accordance with the terms of plaintiff's application, dated July 31, 1909. Under these circumstances, and in the absence of any evidence of fraud or bad faith on the part of defendant, we think it is immaterial that plaintiff was not notified of the issuance of the new policy before the fire occurred and did not receive it until some three weeks after that event. If the second were the only policy, it could scarcely be contended by the company that it was not liable thereunder, because it had not reached the hands of the insured before the fire. It must be borne in mind that the defendant company has patrons in many widely separated localities, at a considerable distance from the home office, which is located in Lansing. The rights of the parties

cannot be made to depend upon the speed or sloth with which clerical work is performed in the home office, nor upon the frequency or infrequency of mail delivery. We conclude, therefore, that at the time of the fire the second policy was in force. Upon this point the following authorities may be consulted: *Dibble* v. *Assurance Co.*, 70 Mich. 1 (37 N. W. 704, 14 Am. St. Rep. 470); *Mallory* v. *Insurance Co.*, 90 Mich. 112 (51 N. W. 188); *Michigan Pipe Co.* v. *Insurance Co.*, 92 Mich. 482 (52 N. W. 1070, 20 L. R. A. 277), and cases cited; *Lum* v. *Insurance Co.*, 104 Mich. 397 (62 N. W. 562).

Defendant does not deny its liability under the second policy. The loss under either policy, as to personal property, is the same and is agreed upon at $197.92. The liability of defendant under the second policy for loss upon the barn was limited to $250. These two sums aggregate $447.92. If plaintiff chooses to remit all in excess of this amount, judgment may be entered therefor; otherwise the judgment will be reversed, and a new trial ordered. In any event, defendant will recover costs of both courts.

OSTRANDER, C. J., and BIRD, BLAIR, and STONE, JJ., concurred.