WHITE et al. v. INSURANCE CO. OF NEW YORK.

SAME v. GERMAN ALLIANCE INS. CO.

(Circuit Court, D. Rhode Island. March 6, 1899.)

1. INSURANCE—BROKERS—AUTHORITY.
    An insurance broker was employed to obtain $40,000 additional insurance on property which was insured for $60,000, and thereafter, on being notified that defendants desired to cancel the policies purchased, procured other insurance to be substituted therefor, the policies for which had been mailed, but not received, at the time of the loss. *Held*, that the broker had no authority to increase the total insurance beyond $100,000, and hence that both sets of policies were not in force at the time of the loss.

2. SAME—POLICIES—ASSURED'S POSSESSION—EFFECT.
    Mere possession of policies by assured at the time of loss is not conclusive evidence that they were in force at that time.

3. SAME—BROKER—AGENT OF ASSURED.
    The fact that an insurance broker was authorized to procure insurance does not make him the agent of assured to receive notice of cancellation of the policies.

4. SAME—AUTHORITY TO SUBSTITUTE.
    An insurance broker was authorized to procure certain insurance, and given discretion in the selection of the companies. At various times previous to the loss, he procured substituted insurance, selecting new companies, without objection from assured. Previous to the loss, defendants notified the broker that they desired to cancel the policies, whereupon he, with knowledge of assured, procured other insurance. The new policies had not been delivered at the time of the loss, nor had assured surrendered the old ones, but he made claim under the substituted policies, and received moneys thereon, and afterwards surrendered the old policies. *Held*, that the substitution was authorized, and that defendants' liability on the old policies had ceased before the loss.

F. W. Tillinghast and W. G. Roelker, for plaintiffs.
E. S. Mansfield, J. M. Ripley, and J. Henshaw, for defendants.

BROWN, District Judge. These are actions on fire policies, and were heard upon evidence, jury trial being waived. Before the loss, the broker who had placed the policies in suit was notified that the defendants desired to cancel the policies. Thereupon the broker contracted for new insurance to replace the old, and notified the defendants' agents thereof. The new policies were issued by other companies before the loss, but were in the mails at the time of the fire, and had not reached the broker or the plaintiffs. The old policies, now in suit, were in the possession of the plaintiffs at the time of the fire. The plaintiffs claim that the policies in suit were in force at the date of the fire, for the reason that no effective notice of cancellation had reached the plaintiffs before the loss. They claim— First, that, at the time of loss, both the original policies and the new policies were in force, and that the liability of the defendants is to contribute to a loss of $83,000 on the basis of a total of $127,000 of insurance; second, that if both sets of policies were not in force,

93 F.—11

and if the total insurance was but $100,000, the defendants are liable to contribute on that basis to a loss of $83,000. It is agreed that the loss on the property was $83,000.

We will first consider whether both sets of policies were in force at the time of loss. We think that it will appear that, though there may be some difficulty in determining which set of policies shall bear the loss, there is little difficulty in determining that one set of policies only was in force, and not both sets.

The insurance broker, Tillinghast, was authorized to place insurance upon the plaintiffs' mill property to the amount of $40,000. It is undisputed that he had no authority to exceed this amount. It is also clearly established by the evidence that no act of Tillinghast's was ratified with any intention of increasing the gross amount of insurance. It is agreed that, there being $60,000 previous insurance, Tillinghast was employed to increase the amount to $100,000. In the plaintiffs' brief it is said:

"It is true that the parties had not intended that there should have been more than $100,000 in all on the property, but they had not carried their intentions into legal effect, as they had not taken the proper steps to cancel the policies before the new ones were issued."

The error of the argument advanced to prove the existence of $127,000 of insurance, in violation of the plaintiffs' instructions and of the acknowledged intent, lies in attempting to separate into two parts what was intended as a single transaction. What Tillinghast assumed to do on behalf of the plaintiffs was to substitute insurance. To effect a substitution, and also to keep within his authority to maintain insurance to the amount of $40,000, it was essential that Tillinghast should perform two acts which were related and complementary parts of the single complete transaction of substitution. If he took out new insurance without canceling old, or if he canceled old insurance without taking out new, he violated his instructions, and failed to maintain $40,000 insurance.

· · The only other possible construction for the plaintiffs on this branch of the case is that though Tillinghast exceeded his original authority, by taking out $27,000 additional insurance, this was subsequently ratified by the plaintiffs. The complete answer to this is that the plaintiff Oscar H. White, on the witness stand, expressly disclaimed doing so; and there is abundant evidence in his letter to C. B. Shove, dated October 19, 1897, and in his proof of loss to the Insurance Company of the State of New York, that he intended to adopt the broker's complete act of substitution of insurance, including both the cancellation of old policies and the taking out of new.

There is no basis whatever in the evidence for the claim that the plaintiffs intentionally adopted that part of Tillinghast's act which was for their benefit, to wit, the procurement of new policies, and repudiated that part which was to their detriment,—the cancellation of the old policies. If the broker's acts were originally authorized or subsequently ratified, only the new policies were in force. If not authorized or ratified, only the old policies were in force. If it is true that the old insurance was in force, because the policies had not been delivered up by the plaintiffs at the time of the fire, then it is

equally true that the new policies were not in force, because they had not then been accepted by the plaintiffs. If, under the circumstances, there could be a ratification after the loss,—a question which it seems unnecessary to decide in this case,—we should be compelled to apply the rule that, if a principal ratifies that which favors him, he ratifies the whole. Gaines v. Miller, 111 U. S. 395, 398, 4 Sup. Ct. 426. If a ratification of the taking out of the new policies was made, that would necessarily be equivalent (under the undisputed evidence) to a ratification of the cancellation of the old insurance. I find, therefore, that, at the date of loss, only $100,000 of insurance was in force.

The main question in the case, therefore, is: Was Tillinghast authorized, before the fire, to substitute insurance, by taking out new insurance, and canceling old? If he was so authorized, there can be no doubt that a complete substitution of insurance was effected before the loss; since he had placed the new insurance, and given notice thereof to the defendant, long before the fire. The mere possession of the written policies is not conclusive. It is true that the fact that Tillinghast was authorized to procure the insurance did not make him the agent to receive notice of cancellation. Grace v. Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207. There is, however, in the present case, evidence of a course of dealings which tends to establish the authority of Tillinghast to maintain insurance to the amount of $40,000, and from time to time to substitute insurance for that originally taken out. I find that Tillinghast was instructed in general terms to procure $40,000 insurance, and was given full discretion in the selection of the original companies; that he at various times between July 22, 1897, and the date of the fire, August 19, 1897, procured substitutional insurance, selecting the new companies without objection from White, who, upon receipt of the new policies, returned the old to Tillinghast; that on July 24, 1897, Tillinghast, in writing White, requested the return of other policies, saying, "I will send you others to take their places;" that on July 27, 1897, he wrote, "I will have to make another change, when I will send you policies by tomorrow, which I trust will make everything all straight;" that on August 3, 1897, Tillinghast wrote for other policies, saying, "I will send you others to take their places;" that on August 6, 1897, he wrote, "I have replaced all the insurance on both mills now. Please return me at your earliest convenience all the policies you have, except the two I send you to-day." I find from this evidence that Tillinghast was given the same discretion in the selection of new companies as in the selection of the original companies. Though there is no evidence of any authority given in express language to substitute insurance, and though it appears that White in no case surrendered an old policy until after the receipt of a new one, I think that the course of dealings between White and Tillinghast is sufficient evidence that Tillinghast was authorized to make a substitution of policies. The acquiescence of White, and the absence of any protest under circumstances which would have called for a protest had Tillinghast's assumption of authority been unwarranted, are matters deserving special attention. Tillinghast's letter of August 6th con-

veyed the information that the insurance covered by the policies in suit had been replaced; yet it does not appear that White took any steps to repudiate this act in his behalf. Furthermore, White, while on the stand, made no denial that Tillinghast was authorized to substitute insurance, nor did he testify that he exceeded his authority in so doing. We should also consider, as bearing upon the question of original authority, the fact that White adopted the benefits of what the broker did, and made claim under the substituted policies, and received moneys on account thereof. Tillinghast's authority was not questioned by the plaintiffs at the time of the loss. On the contrary, the new policies were accepted, and claim made and payment received thereunder; and the old policies now in suit were surrendered on the 24th of August, about four days after the fire, after the plaintiffs had taken legal and other advice. On the whole evidence, I am of the opinion that, by a preponderance of evidence, it is established that the substitution of new policies for old was duly authorized, and that, before the time of the loss, the liability of the defendants had ceased, through the substitution of other contracts of insurance for those of the policies in suit. If, for any purpose, the parties desire a more specific statement of findings of fact or law, they may within 10 days present requests therefor. Judgment will be for the defendants.