MARTIN *v.* INSURANCE CO.

(*Nashville.* February 2, 1901.)

1. INSURANCE, FIRE. *Authority of broker.*

The fact that an insurance broker was employed by the insured to procure a policy does not, without more, invest him with implied authority to accept or receive notice of its revocation, or to assent to its cancellation or to its substitution by the policy of another company. An agent to procure a contract has no power to discharge it ·implied from the original authority merely.

2. SAME. *No release from liability.*

An insurance company is not released from liability for a loss occurring after an attempted revocation of its policy and substitution of the policy of another company, where notice of the revocation was not given to the assured, but to the broker who had been employed by him for the sole purpose of procuring the policy, and the broker, without express authority from the assured, assented to the revocation and proceeded to procure and substitute a policy in another company, to which arrangement the assured never assented. And the company issuing the substituted policy is not liable thereon in such case.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

EDWARD H. EAST for Martin.

GRANBERY & MARKS for Palatine Ins. Co.

Martin *v.* Insurance Co.

R. W. BARGER and JOHN J. VERTREES for Hartford Ins. Co.

McALISTER, J. This record presents a controversy between two fire insurance companies as to which shall be onerated with a loss. The complainant has sued both companies. The Palatine Company issued the first policy, but it is contended that policy was canceled upon notice, and a new policy substituted in the Hartford Company. The Chancellor and the Court of Chancery Appeals concurred in adjudging liability against the Palatine Company, and in exonerating the Hartford Company. The Palatine Company appealed, and has assigned errors.

The facts found by the Court of Chancery Appeals are substantially these: In December, 1897, P. Bernstein, of Nashville, was the owner of a stock of merchandise in the city of Jackson, Tenn. His son, C. Bernstein, was placed in charge of this store as manager. It appears that P. Bernstein insured this stock of goods at Jackson, and carried the policies with him to Nashville, where he resided. Desiring additional insurance, he directed his son, at Jackson, to take out another policy for $2,000. The son accordingly applied to Fisher & Wilkerson, agents, stating that he preferred a policy either in the Hartford or Aetna Insurance companies. The agents informed him these companies had as much insurance in that

block as they desired, but they would procure a policy for him in the Palatine Insurance Company. This insurance was placed through another agent, and the policy was to run for twelve months. Wilkerson & Fisher delivered this policy to C. Bernstein, and collected the premium for one year, with the understanding that they would divide commissions with the agent of the Palatine Insurance Company in accordance with the usual custom in such cases. This policy was forwarded by C. Bernstein to his father at Nashville.

P. Bernstein, the father, died on December 26, 1897, and on December 31 N. Martin, of Nashville, qualified as administrator of his estate. It appears that on December 30 the agent of the Palatine Insurance Company notified Wilkerson & Fisher that the manager of the Palatine Company desired to take up the policy that it had issued on this stock. They replied, "All right; consider it canceled, and we will substitute for it our policy in the Hartford." At that time nothing was said about returning the premium. On January 1, 1898, Wilkerson & Fisher, without the request of any one representing the assured, wrote a policy in the Hartford Insurance Company for $2,000, payable to the estate of P. Bernstein, deceased, for one year from January 1, 1898. This policy was handed to Clarence Bernstein, and by the latter given to N. Martin, administrator of Philip

Bernstein, deceased. The administrator received the policy on January 7, and up to that time he had no knowledge of any change in the policies made by the agents.

When the Hartford policy was delivered to C. Bernstein he was informed that the Palatine policy had been canceled. C. Bernstein afterwards promised to have the Palatine policy sent back to the agent. He stated, however, that he did not agree to the cancellation of the Palatine policy. On the night of January 4, 1898, a fire occurred which destroyed a portion of the stock covered by the insurance. The Palatine policy had never been surrendered by the administrator, but was still in his possession. The administrator inquired of Wilkerson & Fisher, and of the agent of the Palatine, which of the two policies was in force, and offered to surrender the one that had been annulled, but they declined to pass upon the question, or to accept a surrender of either policy.

The administrator made proofs of loss to both companies. The amount of the loss sustained by the fire was $649.42. This amount is not disputed, but which of the two companies is liable for the loss presents the real controversy. In the contract of insurance is this clause, to wit: "This policy shall be canceled at any time, at the request of the insured or by the company, by giving five days' notice of such cancellation. If

this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate. Except when this policy is canceled by this company by giving notice, it shall return only the *pro rata* premium."

The Court of Chancery Appeals find as a fact that the only notice of the cancellation of the Palatine policy was given to Wilkerson & Fisher; that they were not agents of the insured, and that notice to them was insufficient under the terms of the policy. It is very obvious upon the facts found that Wilkerson & Fisher were merely insurance brokers; their only connection with the case was in negotiating insurance through the agent of the Palatine Insurance Company. When this policy was written and accepted by the insured, Wilkerson & Fisher had no further connection with the case.

It appears that when the Hartford policy was issued Bernstein was dead, and the insurance was made payable to his estate. It is shown that Martin, administrator, neither agreed to the cancellation of the Palatine policy nor applied for the Hartford policy. So it is plain that the alleged cancellation of the old policy and the substitution of the new one was an arrangement

entered into between persons who had no authority to act in the premises.

In *Kerman* v. *Insurance Co.,* 100 N. Y., 411, it was said, viz.: "But the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the policy. It cannot in reason be held to continue after the insurance has been procured and the policy has been delivered to the principal. An agent to procure a contract has no power to discharge it implied from the original authority merely. If he possesses that power it arises from some actual or apparent authority superadded to the mere power to enter into the contract." *Grace* v. *Am. Central Ins. Co.,* 109 U. S., 278; *Adams* v. *Fire Ins. Co.,* 17 Fed. Rep., 630; *Kehler* v. *N. O. Ins. Co.,* 23 Fed., 709; *Wright* v. *Royal Ins. Co.,* 53 Fed. Rep., 340; Ostrander Fire Ins. Cos., Sec. 16; 1 Joyce on Ins., Secs. 636, 637; 2 Joyce on Ins., Secs. 1655-1666; *White* v. *Ins. Co.,* 120 Mass., 330; Mechem on Agency, Sec. 931.

It results that there was, as matter of law, no cancellation of the policy issued by the Palatine Insurance Company, nor substitution of the Hartford policy, and without discussing other questions, which are perhaps equally as conclusive, we affirm the decree.