HANOVER FIRE INS. CO. v. TURNER.

(Court of Civil Appeals of Texas. Texarkana. April 18, 1912. Rehearing Denied May 23, 1912.)

1. INSURANCE (§ 665*)—ACTIONS — EVIDENCE —SUFFICIENCY.

In an action on a fire insurance policy, evidence *held* to warrant a finding that its agent was authorized to make an agreement with an insurance broker acting for plaintiff so as to bind the insurer thereby.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

2. INSURANCE (§ 108*)—ACTS OF AGENT—EFFECT.

Where an owner of property instructed an insurance broker to keep it insured for a certain period, and the broker agreed to do so, the act of the broker in securing a policy to take the place of one which had become worthless owing to the failure of the insurer inured to the benefit of his principal, though the principal did not know of the act.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 132; Dec. Dig. § 108.*]

3. INSURANCE (§ 665*)—ACTIONS—EVIDENCE.

In an action on a fire insurance policy issued by an insurance broker with the assistance of a special agent of the insurer, evidence *held* insufficient to warrant a finding that the policy was issued without notice to the insurer's agent that the broker was acting as agent for the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

4. INSURANCE (§ 349*) — PREMIUMS — PAYMENT.

Where an insurance broker, whose duty it was to keep the premises of his principal insured, secured a new fire policy to take the place of one which had become worthless owing to the failure of the company, and insurer agreed to look solely to the broker for the payment of the premium, the nonpayment of the premium did not affect the insured's right of recovery; the insurer's remedy being an action against the broker.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 891, 895–902, 913; Dec. Dig. § 349.*]

5. APPEAL AND ERROR (§ 1033*)—REVIEW— HARMLESS ERROR.

Errors in favor of the appellant are not prejudicial and cannot be complained of on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by J. H. Turner against the Hanover Fire Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

A house belonging to appellee was destroyed by fire March 29, 1911. He recovered a judgment against appellant for $800, as the indemnity he was entitled to by the terms of a policy which he alleged appellant had issued to him March 27, 1911, insuring said house against fire for a period of one year from said March 27, 1911. In its answer appellant asserted that the policy was not issued by it or by its authority, and then alleged as follows: "That the said plaintiff, at the date of the purported issuance of the policy as alleged in his petition, was insured under an existing policy of insurance, against loss by fire of the property alleged to have been destroyed, in an insurance company, to wit, the Farmers' & Merchants' Insurance Company of Lincoln, Neb., which said policy was in the possession of said plaintiff, and which he had not surrendered or canceled or offered to surrender or cancel or tendered for such purpose, and which was a valid, subsisting and enforceable contract against said insurance company. This defendant shows that the purported policy of insurance sued upon as issued by it was issued on, to wit, the 27th day of March, 1911, without request, knowledge, or acquiescence of the plaintiff; that he made no application therefor, nor was the same ever tendered, delivered, or agreed to .be tendered or delivered to him during the existence of the property purported to be insured thereby; and that the said purported policy never at any time previous to the destruction of the property in question in any manner came into existence as a contract of insurance with the knowledge, present or prospective, of said plaintiff, and he never became bound in any manner whatsoever by any of the obligations arising out of said purported policy."

C. F. Adams was the agent at Marshall, where the house was situated, of the Farmers' & Merchants' Insurance Company. He was also the agent at that place of the appellant and other insurance companies.

In a supplemental petition appellee alleged that he had employed Adams to procure insurance on the house and to keep same insured for a period of three years; that in compliance with his undertaking, Adams procured insurance on the house in the Farmers' & Merchants' Insurance Company; that by virtue of his employment by appellee it was Adams' duty to reinsure the house, if for any reason the insurance he had procured for appellee in the Farmers' & Merchants' Company "should fail or become invalid"; that about March 1, 1911, said Farmers' & Merchants' Company became insolvent; that Adams, with the consent and approval of appellant, it knowing the risk had been covered by the policy of the Farmers' & Merchants' Company, and that he was doing so in compliance with his undertaking to act for appellee in keeping the house insured, rewrote the insurance in appellant company, and, as directed by it, held

the policy for appellee's benefit; and that the premium due appellant for such reinsurance was paid to and accepted by it. Appellee further alleged that the appellant company, for a valuable consideration, had "agreed to rewrite all the insurance in Marshall formerly carried 'in the Farmers' & Merchants' Insurance Company, including the property of the plaintiff," and had "contracted to reinsure the property of plaintiff, which policy of insurance so provided for was to take the place of the one formerly issued by the Farmers' & Merchants' Insurance Company, so as to keep plaintiff's property insured. And the said defendant having requested and directed the issuance of said policy, and fully authorized and empowered its agent to issue same, is now estopped to deny the justice and validity of said contract and policy of insurance."

In a supplemental answer appellant alleged as follows: "That if the said C. F. Adams became the agent of the plaintiff for the purpose of attending to his business in procuring insurance, which this defendant was not at any time advised of, then this defendant shows that such fact entitled it to avoid said policy, if any valid policy ever existed, which it denies, and it here now repudiates any acts or purported acts of the said C. F. Adams while attempting to bind it acting as the agent of the said plaintiff, and if any sum has been paid to it by way of premium on said purported policy, which it denies and says it has no knowledge of, then it here now tenders such sum, if any, as may have been paid and may have been found to have been paid, and prays that judgment may be had against it in favor of plaintiff in said amount, and that as to plaintiff's demands it go hence without day."

Adams was the only witness. He stated that after he, as agent for the Farmers' & Merchants' Company, had issued a number of its policies, the one to appellee among them, he noticed in a newspaper that said Farmers' & Merchants' Company had been excluded from doing business in the state of Ohio; that, using his language, he "immediately got busy," and obtained information as to the standing of the company from the Texas Commissioner of Insurance and Banking, and from a Mr. Zweig. The nature of the information he obtained from the Commissioner of Insurance and Banking he did not disclose, but Zweig advised him that the Farmers' & Merchants' Company's business was fully protected by a bond filed with said commissioner, and that he need have no fears about the safety of the business. He further testified that having in view the rewriting of the risks in that company, he, on January 21, 1911, by telegraph requested Reinhardt & Son, at Dallas, who were the general agents of appellant and two other companies whom he, as local agent at Marshall, represented, to send him a supply of

blank policies of those companies; that on the same day he talked with Reinhardt & Son over the phone, telling them that the Farmers' & Merchants' Company had failed, and that he wished to rewrite its risks for unexpired terms in appellant and the other two companies he represented as local agent, and which, as stated, Reinhardt & Son represented as general agents; that in that conversation Reinhardt & Son advised him they would not write the risks for the unexpired terms, but would take all he would give them for full terms, meaning, he said, "for a full period of 12 months, or a full period of 3 years, as the case may be"; that on the same day, after the conversation between them over the telephone and after they had telegraphed him, Reinhardt & Son wrote him as follows: "Referring to phone conversation had with you to-day, we wired you just now as follows: 'Cannot write Farmers' & Merchants' business for unexpired term. If you wish to write policies for full terms advise us and we will send special agent to inspect and assist'—which message we now beg to confirm. Should the plan suggested by us meet with your approval, please advise us promptly in order that we may give the matter the necessary attention." He further testified that after he received the telegram referred to in Reinhardt & Son's letter and a letter from Mr. Zweig, but on the same day, he wrote Reinhardt & Son as follows: "Mr. Zweig writes me that the F. & M. business is fully protected by the required bond filed with the Insurance Commissioner at Austin, and that I need have no fears about the safety of the business. I have nevertheless given your companies several of its risks, and will very probably give them more, but the business will not be rewritten in toto unless I learn that Mr. Zweig is mistaken. However, you may ship me the supplies asked for at once." After this letter was written, but on the same day, Adams testified, a young man named Hirsch came to his office with the blank policies he had requested Reinhardt & Son to send him, and, throwing the blanks on a table, said: "These will take the Farmers' & Merchants' risks, and will take all you give us, and if you are going to give them all to me, I want to review them." That he told Hirsch he would not give Reinhardt & Son all said risks, but would divide same between them and other agents in Dallas, who had agreed to take part of same. Hirsch, the witness said, was in his office two or three days, "reading the policies written in the Hanover, and other policies." Adams further testified that while Hirsch was with him they reached an understanding as to how the policies to cover the Farmers' & Merchants' risks would be written, and "how the premiums would be paid." Adams testified: "I said (to Hirsch), 'Your agency will have to help me carry it,

for I am going to pay for it out of my own pocket,' and Hirsch said, 'We will be glad to give you all the help we can.' He meant by extension of time. He left the policies here. I spoke to him and told him about the delivery of these policies that were to be rewritten. I said, 'I have written some of them.' * * * I said I wanted to hold my business and didn't want anybody to know my company had failed until I had gotten it all rewritten. I rewrote them every one. I said I didn't want to deliver a one of them until they were all rewritten, as I didn't want anybody to know that my company had failed until I had it all rewritten, and Hirsch said it was a good idea; said for me to keep the policies in my office." "Under the agreement had with Mr. Hirsch, and after this conversation with him," the witness testified, "I wrote other insurance in the Hanover, which I reported, some of which had been formerly carried in the Farmers' & Merchants'. I wrote this policy (the one sued on) on the 27th day of March. I mailed the report to the state agents the 29th, the morning after the fire. I sent other reports along with it. They were written on the same day. I have not received any notice canceling the other policies." Adams further testified that it was his understanding that he had paid Reinhardt & Son the premium on the policy sued on. "I asked Reinhardt's man," he said, "to help me carry these risks, as I was paying for them out of my own pocket. I saved about $500 by writing the business. He said he would. * * * Mr. Hirsch's statement was that Mr. Reinhardt would be glad to give me any assistance he could, all the assistance I needed, or something like that. He didn't purport himself to speak for Mr. Reinhardt." It was not pretended that appellee had ever paid anything to appellant as premium on the policy sued on. The claim was that Adams in an adjustment of accounts between himself and appellant had paid the premium. It appeared that after the property was burned appellant refused to recognize liability on the policy, and on May 13, 1911, its general agents, Reinhardt & Sons, wrote to Adams as follows: "Referring to matter of loss under this policy (the one sued on), and to previous correspondence and to Mr. Mayo's conversation with you in the matter, we have to request that pending the disposition of this claim that you do not receive any premium from the assured on account of this policy." Afterwards, to wit, on June 22, 1911, Reinhardt & Son executed to Adams a receipt as follows: "Received of C. F. Adams $754.33 to apply on account for balances due Hanover, State and Union Fire Insurance Companies." The contention, it seems, was that among premiums included in the balances referred to in the receipt was the one on the policy sued on, though Adams testified that nothing was said between himself and appellant's agents "as to what these balances were," and further testified that he still owed the general agents of appellant about $200 on account of business he had transacted for the companies mentioned in the receipt. He did not pretend that he had ever directed any payment he had ever made on account of business he had transacted for appellant, to be applied to the satisfaction of the premium on the policy sued on. It appeared from Adams' undisputed testimony that appellee never had paid anything on account of the policy sued on; that he never knew until after the loss occurred that the Farmers' & Merchants' Company was thought to be unsafe; and that he never knew until after the loss that Adams contemplated rewriting the risk in appellant or any other company, or that he had rewritten it in appellant company. The testimony relied on to show that the policy sued on was written at the instance of appellee, or by his authority, was that of Adams as follows: "I had a conversation with Mr. Turner in which he told me to insure his property for three years, and not let the policy expire. That was about the conversation. If I represented Mr. Turner in any way, it was by occasion of that conversation. * * * Mr. Turner made no specific demand on me, or request on me, for the issuance of this particular policy. None of them knew anything about the failure. He made no such request on me, and so far as I know had never known of the existence of the Hanover policy. I wrote them for Turner, as I wrote them for everybody else, on the basis of the contract entered into. * * * I agreed to keep it (the house) insured at Mr. Turner's request, and was glad to do so as a matter of business." The risks of the Farmers' & Merchants' Company, including that on appellee's house, were written by Adams just as he would have written in the first instance risks he had solicited, and without any other or different report thereof to appellant than he would have made had the business been received in the usual way.

Etheridge & McCormick and Henri L. Bromberg, all of Dallas, for appellant. Beard & Davidson, of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). In support of its assignment complaining of the action of the court in refusing its request to peremptorily instruct the jury to find in its favor, appellant insists: (1) That, as to the agreement between Adams and Hirsch, it did not appear that Hirsch as its agent was authorized to make it; and if it did so appear, it also appeared that the policy sued on, if issued in accordance with such agreement, was issued without the consent or knowledge of appellee. (2) That it appeared that Adams was not authorized as appellee's agent to procure the issuance of the policy, and as he there-

fore in procuring its issuance did not bind appellee, there was a lack of mutuality necessary to make the contract binding on it. (3) That if it did appear that Adams was appellee's agent for such a purpose and acted for him in the transaction, it also appeared that he acted therein as its agent, without knowledge on its part that he was acting for appellee also, and further appeared that as soon as it learned that Adams had acted in the transaction for both it and appellee, it had repudiated his act in its behalf. (4) That it appeared that the premium due on the policy had never been paid.

[1] As noted in the statement above, Adams testified that after appellant's general agents had been advised by him that he wished to place a portion of the Farmers' & Merchants' Company's risks in appellant and other companies represented by said general agents as such, and had requested said agents to send him blank policies for the purpose, and after said agents had advised him that they would send a "special agent to inspect and assist," Hirsch appeared with the blanks, announced they were to "take the Farmers' & Merchants' risks," and then during several days remained in Adams' office inspecting policies. As further noted in said statement, Adams testified that he thereafterwards, in accordance with the agreement with Hirsch, as appellant's agent, issued policies other than the one sued on, covering risks carried by the Farmers' & Merchants' Company, reported same to appellant, and that his right to do so in those instances had never been questioned by appellant. This testimony, we think, was sufficient to support a finding that Hirsch as appellant's agent had authority to bind it by the agreement, as claimed with Adams, authorizing him to issue appellant's policies to cover risks carried by the Farmers' & Merchants' Company, and requiring it to look to Adams alone for payment of premiums on policies so issued. It would seem that Hirsch was sent by appellant's general agents for the specific purpose of arranging with Adams to take over the Farmers' & Merchants' Company's risks. Making the agreement with Adams whereby, as appellee contended, Adams was authorized to issue appellant's policies to cover those risks, and whereby appellant was to look to Adams for payment of the premiums on the policies so issued, it seems to us should be said to have been fairly within the scope of the business Hirsch was sent to transact for appellant. 1 Clark & Skyles' Law of Agency, § 204. Hence we conclude that there was testimony sufficient to support a finding that appellant was bound by the agreement Hirsch made with Adams. [2] If it was, and if, as a jury might have found, the policy sued on was issued in accordance with that agreement, that it was issued without appellee's knowledge we think did not furnish a satisfactory reason why he should have been denied a recovery on it. He had requested Adams to keep

the house insured, and Adams had agreed to do so. If Adams agreed to act for him and did act for him, that appellee did not know he had acted for him we think was of no importance. [3] Nor do we think there is merit in appellant's contention that it should have been relieved of liability on the contract because it appeared it had repudiated Adams' act in issuing the policy as soon as it learned that while acting as its agent in the transaction he also acted therein as appellee's agent. At the time Hirsch made the agreement with Adams, it appeared from the testimony that Hirsch was advised by Adams that he expected to act in the matter of rewriting the Farmers' & Merchants' Company's risks without the knowledge or consent of the holders of the policies which had been issued by that company. At that time Adams informed Hirsch that none of the holders of these policies knew anything about the condition of the Farmers' & Merchants' Company, and that he (Adams) did not intend they should know about it, or about his procuring other policies covering the risks, until all such other policies had been written. Hirsch, according to the testimony, said it was "a good idea," and suggested to Adams that he keep the policies in his office until all of them had been written. In view of this testimony, and the testimony showing that it knew that Adams expected to pay the premiums on the policies out of his own pocket, and had agreed to look to him alone for the payment of such premiums, it seems to us appellant should not be heard to say it did not know at the time the policies were issued that the issuance thereof had been procured by Adams for the benefit of the respective persons to whom they were issued. It must have known that in arranging for the risks Adams was acting for the benefit of appellee and others who held policies in the Farmers' & Merchants' Company, as well as for his own benefit, and must have known that in issuing the policies arranged for he would act for it. [4] The testimony as to the payment by Adams of the premiums on the policy appellant issued to appellee was unsatisfactory. It may not have been sufficient to show such payment. But whether it was or not we think was immaterial. If appellant agreed to look to Adams for the payment of the premium, that Adams had not paid it was not a reason why appellee should have been denied a recovery. Appellant's remedy for that default was by a suit against Adams to enforce the payment of the sum due it. It follows from what we have said that we think the first, second, sixth, seventh, and eighth assignments should be overruled.

[5] Other assignments complain of the trial court's charge. We are not prepared to say it was not erroneous in several of the particulars pointed out, but the errors, if there were errors, were in favor of appellant, and it therefore has no cause to complain of them.

The judgment is affirmed.