NORWICH UNION FIRE INS. SOCIETY v. DALTON. (No. 5398.)

(Court of Civil Appeals of Texas. Austin. Nov. 5, 1914. On Motion for Rehearing, Jan. 20, 1915. On Motion for Rehearing of Plaintiff in Error, March 3, 1915. Rehearing Denied April 14, 1915.)

1. INSURANCE &⇒132—"BINDER."
    A "binder" is a verbal contract of insurance in præsenti, of which the insurance agent makes a memorandum, temporary in its nature, and intended to take the place of an ordinary policy till the same can be issued.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 210; Dec. Dig. &⇒132.]

On Motion for Rehearing.

2. INSURANCE &⇒132 — CANCELLATION AND SUBSTITUTION OF ·BINDERS—AUTHORITY OF AGENTS.
    The mere request of insured to insurance agents to keep him protected may authorize them, without notice to him, to cancel a binder in one company and issue one in another company, if in so doing they are following the custom of all insurance offices.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 210; Dec. Dig. &⇒132.]

3. INSURANCE &⇒94—UNAUTHORIZED INSURANCE—RATIFICATION.
    If insurance agents are not authorized to effect insurance, it cannot be made effective by being ratified by insured after the fire; as ratification must be at a time when a valid contract could be made.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 124; Dec. Dig. &⇒94.]

On Motion for Rehearing of Plaintiff in Error.
4. APPEAL AND ERROR &⇒1178—DISPOSITION OF CASE—REMAND FOR NEW TRIAL.
    Though there was testimony of a custom which could make valid the insurance contract sued on, yet, it having been an irresponsive answer, and the custom not being referred to in the pleadings, and not appearing to have been considered at the trial, and no issue as to it having been submitted to the jury, the judgment on a general verdict for plaintiff will be reversed, and the case remanded for new trial.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604–4620; Dec. Dig. &⇒ 1178.]

Error from District Court, McLennan County; Richard I. Munroe, Judge.

Action by Crate Dalton against the Norwich Union Fire Insurance Society. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Wm. Thompson, of Dallas, and Jno. S. Patterson, of Austin, for plaintiff in error. Witt & Saunders and Williams & Williams, all of Waco, for defendant in error.

Findings of Fact.

JENKINS, J. (1) On September 17, 1912, and thereafter until its destruction by fire, defendant in error was the owner of the property alleged to have been insured by plaintiff in error.

(2) On said date defendant in error applied to, and obtained from, Friedlander & Ludde, insurance agents in Waco, where defendant in error and Geo. S. McGee reside, additional insurance in the sum of $5,000 on the building subsequently burned. This was all the business transaction that defendant in error ever had with said agents, except as hereinafter set out.

(3) On November 6, 1912, defendant in error phoned Friedlander & Ludde that he had sold the building to Geo. S. McGee, that the deed had been executed and placed in escrow, and that he desired $5,000 additional insurance in favor of McGee and of himself as mortgagee, and that he would call the next day and furnish the data from which to write the policy. A clerk in said agents' office replied that the request would be granted, and immediately made the following memorandum in the book kept for such purpose:

"November 6, 1912. Crate Dalton policy $5,-000.00 in F. F. transferred to Geo. S. McGee, purchaser; also write $5,000 additional insurance separate binder in Ga. Home and N. B. M."

By "N. B. M." was meant North British & Mercantile Insurance Company. At the same time he addressed a letter to each of

---

said companies, advising them of the binders, and stating that a daily report would follow on the morrow.

(4) On the next day defendant in error met Friedlander on the street, and was informed by him that the binders had been written for $2,500 in each of the companies above named. Defendant in error replied that the deal had not been consummated, but was still pending, and requested Friedlander to keep him and McGee protected until such time as he might notify him how the policies should be written. Friedlander promised to do so.

(5) On November 9th defendant in error called at the office of Friedlander & Ludde, and inquired if the policies had been written, and was informed that they had not, but that the binders were still in force. He stated that the trade with McGee was being held up, and requested that no policies be issued for the present, but that in the meantime the property be protected. To this said agents assented.

(6) On November 11th, about 2 p. m., Friedlander & Ludde received from the North British & Mercantile Insurance Company the following telegram:

"Please cancel binders sanitorium building favor McGee. Letter explains."

The building upon which the binders had been issued was known as the Sanitorium. They immediately drew a pencil mark through "N. B. M." as written in the memorandum, and interlined above it "Nor. Un.," meaning thereby the Norwich Union Fire Insurance Society, and also addressed a letter to the general agents of plaintiff in error at Galveston, Tex., advising them that they had bound plaintiff in error in the sum of $2,500 on said property, and also addressed a letter to the North British & Mercantile Company advising them that their binder had been canceled.

(7) Defendant in error knew nothing as to any of the facts stated in the preceding paragraph of this statement of facts until after the fire. At the time of his conversation with Friedlander on November 7th, and afterwards at the time of his conversation with both of said agents in their office, it was not in contemplation of either of said parties that the binder in the North British & Mercantile Company or in the Georgia Home Company would be canceled, nor that any other company would be substituted in lieu of either of such companies, or that any occasion would arise for such cancellation or substitution.

(8) Friedlander & Ludde were the local agents in Waco of the Georgia Home Insurance Company, the North British & Mercantile Company, and of plaintiff in error.

(9) On November 11th, at about 9 o'clock p. m., the property was destroyed by fire.

(10) On November 12th Friedlander & Ludde wired the general agents of plaintiff in error that the property had been destroyed, which telegram was received by them before notice of binder.

(11) On November 14th Friedlander & Ludde issued a policy in the Norwich Union for $2,500 on the property in favor of Geo. S. McGee, for the term of one year, with a mortgage clause in favor of defendant in error, and dated the same November 11, 1912.

(12) On November 16th Friedlander & Ludde received a letter from the general agents of plaintiff in error, requesting them not to deliver the policy. On the same day, Friedlander & Ludde received the premium from defendant in error, and remitted the same by letter to the general agents of plaintiff in error, who declined to receive the same, and returned it to Friedlander & Ludde.

(13) On December 12, 1912, defendant in error made proof of loss to plaintiff in error, and in January, 1913, made proof of loss to the North British & Mercantile Company.

(14) Defendant in error testified upon the trial hereof that he was not claiming the insurance against both the North British & Mercantile Company and plaintiff in error, but only against the one that was legally liable therefor. It was not the intention of either the defendant in error or of Friedlander & Ludde that both policies should be in force at the same time.

(15) Friedlander & Ludde, in issuing policies for the North British and for all other companies represented by them, used only the standard form of policy prescribed by the insurance commissioner of the state of Texas, which required five days' notice in order to cancel a policy, and this would have been in the policy had one been written by them on the North British & Mercantile Insurance Company binder.

## Opinion.

A number of legal questions are incidentally involved in this case, but a correct decision herein depends upon the issue as to whether the insurance agents Friedlander & Ludde were, as a matter of law from the facts stated, authorized to cancel, without the knowledge or consent of the defendant in error, the binder issued by them in the North British & Mercantile Insurance Company, and substitute therefor the binder in the Norwich Union Fire Insurance Society.

The general principles of law involved are well settled, and may be stated as follows:

[1] 1. A written memorandum such as was made by the local insurance agents is known in insurance terminology as a "binder." A binder is a verbal contract of insurance in præsenti, temporary in its nature, intended to take the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a

formal policy. It will be construed as containing all of the provisions of an ordinary policy, including the provision for cancellation. Lipman v. Insurance Co., 121 N. Y. 454, 24 N. E. 699, 8 L. R. A. 719; Cooley's Ins. Briefs, 2790.

2. When a contract of insurance has been entered into, it cannot be annulled, except by the consent of the parties thereto, unless otherwise provided in the policy. This is but the statement of the elementary law of contracts, and will be found in a number of the cases herein cited, and in all of the textbooks on insurance.

3. Another elementary principle of the law of contracts applicable to insurance is that the property must be in existence at the time the policy is issued. As a corollary to this, the rights of the parties are fixed at the time the property is destroyed. Blake v. Insurance Co., 67 Tex. 165, 2 S. W. 369, 60 Am. Rep. 15; Insurance Co. v. McKenzie, 70 Ill. App. 615; Insurance Co. v. Turnbull, 86 Ky. 230, 5 S. W. 542; Insurance Co. v. Lumber Co., 89 Me. 26, 35 Atl. 1008, 35 L. R. A. 278; Kerr v. Insurance Co., 117 Fed. 447, 54 C. C. A. 616; Hermann v. Insurance Co., 100 N. Y. 411, 3 N. E. 341, 53 Am. Rep. 197; Cooley's Ins. Briefs, 2790. A policy issued in lieu of another which has not been legally canceled is not a binding contract. Clark v. Insurance Co., 86 Me. 26, 35 Atl. 1008, 35 L. R. A. 276.

4. When one of the conditions for the cancellation of a policy is that notice must be given, the notice must be given for the full time, if any, specified in the policy. Insurance Co. v. Flippin, 4 Tex. Civ. App. 576, 23 S. W. 552; Insurance Co. v. Urbansky, 113 Ky. 624, 68 S. W. 654; Clark v. Insurance Co., supra; Insurance Co. v. McKenzie, 70 Ill. App. 615; Insurance Co. v. King, 108 Ark. 130, 156 S. W. 445; Yoshimi v. Insurance Co., 99 App. Div. 69, 91 N. Y. Supp. 393.

5. In insurance, as in all other contracts, notice to an agent is notice to his principal, but it must be within the scope of his authority to receive such notice. Lumber Co. v. Insurance Co., 158 Iowa, 563, 138 N. W. 504, 51 L. R. A. (N. S.) 539; Clark v. Insurance Co., supra; and other authorities herein cited.

6. A broker who is employed by the insured to attend to all of his insurance, and to keep his property insured, is the agent of the insured for the purpose of receiving notice of the cancellation of a policy, and may waive such notice, and surrender a policy for cancellation, and receive another in lieu thereof. Such authority may be presumed from a long course of dealing between the parties. Johnson v. Insurance Co., 66 Ohio St. 6, 63 N. E. 612; Hamm v. Insurance Co., 80 Minn. 139, 83 N. W. 41; Dibble v. Insurance Co., 70 Mich. 1, 37 N. W. 704, 14 Am. St. Rep. 470; Buick v. Insurance Co., 103 Mich. 75, 61 N. W. 337; Kerr v. Insurance Co., 117 Fed. 447, 54 C. C. A. 616; Cooley's Ins. Briefs,

2798; Lumber Co. v. Insurance Co., 158 Iowa, 563, 138 N. W. 504, 51 L. R. A. (N. S.) 539.

7. An agent of an insurance company may act as broker for the insured where his position is known to both parties to the contract, or where his acts are not detrimental to either party, but beneficial to both; as where he is applied to for insurance, and no company is named by the insured, and the risk is such as he would solicit, and he writes the policy in a solvent company. In the latter case his agency on behalf of the insured ceased when he has selected the company and placed the risk. Clark v. Insurance Co., supra; Insurance Co. v. Urbansky, 113 Ky. 624, 68 S. W. 653; Martin v. Insurance Co., 106 Tenn. 523, 61 S. W. 1024; Kerr v. Insurance Co., 54 C. C. A. 616, 117 Fed. 446.

8. A broker (including the insurance agent, where he is authorized to act as such for the insured) who is not the general agent to place and manage the insurance business of his principal, but who is employed to secure insurance on certain property, exhausts his authority upon procuring such insurance, and notice to him thereafter, is not notice to the insured. Insurance Co. v. Blum, 76 Tex. 653, 13 S. W. 572; Rothschild v. Insurance Co., 74 Mo. 41, 41 Am. Rep. 305; Hermann v. Insurance Co., 100 N. Y. 411, 3 N. E. 341, 53 Am. Rep. 197; Martin v. Insurance Co., 106 Tenn. 523, 61 S. W. 1024; Cooley's Ins. Briefs, 2819.

9. A broker such as is mentioned in the preceding paragraph of this opinion has no authority to consent to the cancellation of a policy issued to his principal, nor to issue nor to receive another policy issued in lieu of the policy sought to be canceled. Insurance Co. v. Urbansky, 113 Ky. 624, 68 S. W. 654; Martin v. Insurance Co., 106 Tenn. 523, 61 S. W. 1025; Grace v. Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932; Johnson v. Insurance Co., 66 Ohio St. 6, 63 N. E. 612; Clark v. Insurance Co., supra; Quong Tue Sing v. Insurance Co., 86 Cal. 566, 25 Pac. 58, 10 L. R. A. 144; Insurance Co. v. McKenzie, 70 Ill. App. 615; Massasoit v. Insurance Co., 125 Mass. 110; Yoshimi v. Insurance Co., 99 App. Div. 69, 91 N. Y. Supp. 393.

10. Notice by an insurance company to its agent, who is not also the agent of the insured for the purpose of receiving such notice is ineffectual and will not work a cancellation of the policy. Such notice is no more than notice by the company to itself that the policy must be canceled. Insurance Co. v. McKenzie, 70 Ill. App. 622; Insurance Co. v. Turnbull, 86 Ky. 230, 5 S. W. 542; Mill Co. v. Insurance Co., 105 Mo. App. 146, 79 S. W. 721; Lumber Co. v. Insurance Co., 158 Iowa, 563, 138 N. W. 504, 51 L. R. A. (N. S.) 539; May on Ins. (3d Ed.) 117; Cooley's Ins. Briefs, 2796; Insurance Co. v. King, 108 Ark. 130, 156 S. W. 445.

Applying the foregoing rules of law to the

facts of this case, we conclude that Friedlander & Ludde were not the agents of defendant in error for the purpose of receiving notice of the cancellation of the binder issued by them in the North British & Mercantile Company, nor for the purpose of waiving the five days' notice required by the implied terms of such binder, nor for canceling said binder and substituting the binder of plaintiff in error in lieu thereof. Therefore the binder in the North British & Mercantile Company was not legally canceled, and the attempted substitution of the binder on the part of the plaintiff in error was void.

As we construe the request of defendant in error, made first to Friedlander on the street, and afterwards to Friedlander & Ludde in their office, to keep him protected and to keep the property protected, it amounted to no more than to let the binders which had theretofore been issued remain in force; and it is apparent from the testimony that these agents so understood those requests at the time they were made. The parties to these conversations admit that they did not have in mind the cancellation of either of said binders, and the substitution of others in their place, nor the probability of any such cancellation or substitution being necessary. If Friedlander & Ludde had not undertaken to cancel the binder in the North British & Mercantile Company without giving the five days' notice to which defendant in error was entitled, these requests would have been fully complied with, and defendant in error would have had ample time, as the law contemplates he should have had, to place the risk elsewhere. A request to protect should not be construed as authority to destroy such protection. That the agents believed that they had such authority only shows their misapprehension of the law.

Had the defendant in error known of such cancellation and substitution prior to the fire, and made no objection thereto, it would have constituted a waiver on his part as to the binder in the North British & Mercantile Company, and an acceptance of the binder attempted to be substituted therefor. But, as the rights of all parties became fixed at the time of the destruction of the property, he could not thereafter give vitality to the unauthorized acts of the insurance agents by ratifying the same.

This case must be viewed in the light of one who may have obtained insurance under circumstances similar to those of defendant in error, except the attempted issuance of the second binder. Had the agents, upon receiving the telegram to cancel the binder, undertaken to have done so without the knowledge or consent of the · defendant in error, and without issuing any other binder, and had the property been destroyed as it was, clearly the defendant in error would have been entitled to recover on the first binder, for the reason that such binder would have remained in force until he had received five days' notice of intention to cancel same, unless he had sooner voluntarily surrendered it. If the agents had no authority to cancel the first binder, their attempted issuance of the second one in lieu thereof, without the knowledge or consent of defendant in error, was a nullity.

The case of Insurance Co. v. Turner, 147 S. W. 625, may seem to be against the decision reached by us in this case. In that case it was alleged that the insurance agent was the agent of the insured for the purpose of keeping the property insured, and that "it was his duty to reinsure the house, if for any reason the insurance he had procured for appellee in the Farmers' & Merchants' Company should fail or become invalid." We infer from the opinion that the court found this allegation to be true, and that such policy had failed on account of the insolvency of the company issuing the same. It does not appear to us that this finding was justified by the evidence, but, if so, the decision in that case is correct. We do not so find in the instant case, but to the contrary. It appears from the opinion in the Turner Case that the former policy was attempted to be canceled on account of the supposed insolvency of the company in which it had been issued, and that the company issuing the second policy knew, through its special agent, Hirsch, that it was issuing its policy in lieu of the former policy, without the knowledge or consent of the insured. These facts appear to differentiate the Turner Case from the instant case, but, if they do not, we decline to follow that case.

The disposition which we make of this case renders it unnecessary to pass on other assignments of error.

For the error of the court in refusing to instruct the jury to return a verdict for plaintiff in error, the judgment of the trial court is reversed, and judgment is here rendered for plaintiff in error.

Reversed and rendered.

### On Motion for Rehearing.

[2] It is for the court, and not for the parties, to construe the meaning of the language used by them in making a contract. Such being the case, and there being no dispute as to the language used by the parties, we held on a former day of this term that the insurance agents were not authorized to cancel the binder in the North British & Mercantile Company, and substitute therefor a binder in plaintiff in error company. But the ordinary meaning of language may be varied by the general usage in a particular business. On motion for rehearing our attention has been called for the first time to the testimony of Mr. Friedlander, one of the insurance agents, who testified that in making such cancellation and substitution he "followed the custom of all insurance offices." If such is the fact, and it was not contradicted, the testimony of Friedlander

and of Dalton that the agents were authorized to do as they did takes on a different aspect, and amounts to an explanation of the meaning of the language used as interpreted by the general custom in such cases. Every one is presumed to be acquainted with the general custom of the business in which he engages, and to intend that his language shall be construed in reference thereto. If the request of defendant in error to the agents to keep him protected authorized them under the general usage in fire insurance to cancel the binder in the North British & Mercantile Company, under the circumstances shown herein, and to substitute therefor the binder in the plaintiff in error company, the judgment of the trial court should be affirmed. The jury so found, and the evidence supports their verdict.

[3] We adhere to so much of our former opinion herein as holds that, if the agents were not authorized to effect the insurance sued upon, the same could not be made effective by being ratified by the insured after the fire. A seemingly contrary doctrine is announced by most of the text-writers on insurance, and by a number of cases cited by able counsel for plaintiff in error. Practically all of these writers and opinions hark back to Lucena v. Crawford, 1 Tant. 325; Routh v. Thompson, 13 East. 274; and Hagedorn v. Oliverson, 2 M. & S. 485. Perhaps sufficient attention has not been paid to the fact that these policies were marine insurance, in which property may be insured "lost or not lost"; that a wager policy was valid at common law; and that the policies in those cases were not invalidated by the statute then in force in England. But, aside from this, an examination of those cases will show that they are not authority for the proposition that, where one, without authority, insures property in the name of the owner, such insurance will be valid, and may be enforced by him, if ratified by him after the loss. In neither of said cases did any one take out a policy in the name of the owner, and no suit was brought in the name of the owner. On the contrary, in each of said cases the party effecting the insurance had at such times an insurable interest in the property, and took out the policy and brought suit thereon in his own name. It is true that in each case the insurance was for the benefit of all other persons as their interest might appear. The position of the insured was analogous to that of a warehouseman who takes out a policy on goods stored or to be stored in his warehouse owned by him or held in trust, or sold and not removed. In such case he may recover the full value of the goods. In order for the owner or owners to participate in such recovery, or share in the benefits thereof, he must show that he ratified such insurance; but it is immaterial whether the ratification in such case was before or after the loss. By the terms of the policy the insured is trustee

for the owners, or whoever may become an owner; and, being the agent of the owner of the property in possession thereof and charged with the duty of preserving the same, he may insure it in his own name, and such insurance will inure to the benefit of the owner, not from the time that he may ratify such insurance, but from the time such insurance is effected until he repudiates the same. It is not a case of ratifying an unauthorized act of one falsely assuming to act as agent, but is the acceptance or rejection of an option granted him by the insurance company, for a valid consideration, at the time the policy was issued, with a knowledge of the facts as evidenced on the face of the policy. As to insurance by warehousemen, see Waters v. Assurance Society, 5 E. & B. 870; Miltenberger v. Beacom, 9 Pa. 198; Durand v. Thoron, 1 Port. (Ala.) 238; Watkins v. Durand, 1 Port. (Ala.) 251; Waring v. Insurance Co., 45 N. Y. 606, 6 Am. Rep. 146; Pittman v. Harris, 24 Tex. Civ. App. 503, 59 S. W. 1121; Storage Co. v. Dechman, 73 S. W. 545. A like rule for a like reason applies where a part owner insures for himself and his co-owner (Finney v. Insurance Co., 5 Metc. [Mass.] 192, 38 Am. Dec. 397), or where one of several joint trustees insures in his own name (Insurance Co. v. Chase, 72 U. S. [5 Wall.] 509, 18 L. Ed. 524).

In Lucena v. Crawford, supra, the insurance was on certain captured ships, and was taken out by the commissioners appointed to take charge of and sell the same. They were instructed by the Lord of the Treasury to take out such insurance on the day it was taken out, and before the loss occurred. In Routh v. Thompson, supra, the insurance was likewise on a captured ship, taken out by the agent of the captors for the benefit of whomsoever might ultimately appear to be interested. In both cases the King was adjudged to be the owner, and the party to whose benefit the insurance inured, if he chose to adopt the same. The formal adoption by order of the Council in the latter case occurred June 30, 1810; the loss occurred in December, 1807. In this case Lord Ellenborough, C. J., said:

"The insurance was effective by order of his [the King's] officers whose duty it was to take care of the property, and who were responsible to him for it."

In Hagedorn v. Oliverson, supra, license had been granted to Hagedorn to sail the ship. He was in the constructive possession of the same and had an insurable interest therein. He insured the ship "as well in his own name as in the name of all and every person to whom the same doth or may appertain." He brought suit in his own name, and alleged that one Schroeder was part owner. No previous authority to insure for Schroeder was alleged, and no ratification was shown, except by a letter written by Schroeder two years after the loss, giving instruc-

tions as to how to invest the insurance money when collected. It was argued that the plaintiff ought not to recover for the benefit of Schroeder, inasmuch as he did not ratify the action of Hagedorn before the loss, and might have repudiated the same. Lord Ellenborough said ·that this would be true if the suit had been by Hagedorn against Schroeder to collect the premium. Of course, as Schroeder did not authorize Hagedorn to insure the vessel, if it had arrived safely he might have repudiated the transaction, and he could not be held liable for the premium until he ratified the transaction which he could have done as between him and Hagedorn after the loss.

"But," said Lord Ellenborough, "I do not think that consideration governs the case now before us between this plaintiff and the underwriter."

Le Blanc, J., said:

"This, it must be remembered, is a question between the plaintiff and the underwriter, and not Schroeder and the underwriter."

This distinction a majority of the authors of text-books on Insurance, and courts not a few have evidently overlooked.

The distinction seems to us to be this: If Hagedorn had sued Schroeder to recover the premium advanced on his behalf, he could have replied:

"I never promised, expressly or by implication, to repay you such premium. You advanced it without my authority, and I have not ratified your action."

But when Hagedorn sued the underwriters he was asking only that the written contract between them be enforced. He paid the premium; they agreed to pay him in the event of loss to the extent of the interest of those for whose benefit such insurance was effected, who were the then owners or who might thereafter become owners. He became the trustee for such owners as ratified his action, and was entitled to recover in his own name to that extent. It was no concern of the underwriters whether the owner or part owner ratified such insurance before the loss or afterwards. If the party procuring such insurance had the right to do so in his own name, the contract was closed when he paid the premium and received the policy, and did not need any subsequent ratification to make the same a legal contract. The party advancing the premium could not recover the same back in case of repudiation by the owner, and neither could the underwriter cancel such policy in the event of such repudiation. That it was a completed contract, and not dependent upon the ratification of the owner to legalize it, was emphasized by the judges participating in the decision of Hagedorn v. Oliverson, supra. Le Blanc, J., said:

" * * * The plaintiff was bound by the insurance, and could not have recovered back the premium."

Bailey, J., said:

"A loss has happened upon which the defendant undertook to pay, and, if the premium could not have been recovered · back from the defend-

ant, there is not any circumstance here which should exonerate him from liability. I think the plaintiff never could have recovered back the premium from the underwriter."

The reason given by these judges as to why the premium could not have been recovered back was the uncertainty whether Schroeder would adopt the insurance. If no risk is incurred, the premium may be recovered back, but, once the risk is incurred, the premium cannot be recovered back. Where the party effecting the insurance has an insurable interest, as in the three English cases supra, and in the warehouse cases above cited, a legal contract exists from the moment the insurance is effected and the risk of being liable to pay the insured to the extent of the interest of the owners who may ratify such transaction exists from that time until he or they shall repudiate the same. On the other hand, where one without authority assumes to act as the agent of another, no risk is incurred until the party for whose benefit such insurance was obtained shall have ratified the transaction.

It is urged that the contract of insurance effected by one assuming to act as agent, but without authority to do so, is valid if ratified after the loss, upon the principle that ratification relates back to the inception of the transaction. This is true where the contract attempted to be ratified is one that could legally have been made at the time of such attempted ratification, but not otherwise, for the reason that in such case there is no contract until ratification. The contract being then made by fiction of law, it is held to relate back to the time when it was attempted to be made by one without authority so to do. Under no definition of a contract known to the law could a contract be said to have been made until the minds of both parties have assented thereto. But a party, having accepted the benefit of a contract attempted to have been made for him, by ratifying same, must accept it as a whole, which includes its acceptance as of the date it was attempted to have been made. In the instant case, if the agents were without authority to insure the property of defendant in error, there was no contract of insurance with plaintiff in error until after the fire, and, the property being then nonexistent, no contract for its insurance could be made. If Dalton could not have made any contract for the insurance of the property after the fire, it follows that he could not then make one that would relate back to a time prior to the fire.

In addition to the cases above referred to where the insurance was effected by a warehouseman, co-owner, or trustee in his own name for the benefit of all parties in interest, the following cases, cited by defendant in error, are not authority for the proposition that the owner of property may recover on a policy taken out in his name without his authority and of which he had no knowledge

until after the destruction of the property:

In Larson v. Insurance Co., 208 Ill. 166, 70 N. E. 31, Arnfeld v. Assurance Co., 172 Pa. 605, 34 Atl. 580, and Finley v. Insurance Co. (C. C.) 193 Fed. 195, plaintiffs had accepted the insurance money under the substitute policies, and it was held that they could not thereafter recover on the canceled·policy, upon the ground that the agent was without authority to make such substitution. Having received the benefit of the second policy, the insured was estopped to deny its authenticity. In Arnfeld v. Insurance Co., supra, the court likened insurance to a surety on a note, and said that no one should be permitted to recover twice for the same debt, however many instruments of indemnity he may hold.

In Dibble v. Assurance Co., 70 Mich. 1, 37 N. W. 704, 14 Am. St. Rep. 470, in White v. Insurance Co. (C. C.) 93 Fed. 161, in Todd v. Insurance Co., 2 Ga. App. 789, 59 S. E. 94, and in White v. Insurance Co., 103 Fed. 260, 43 C. C. A. 216, the issue was not ratification, but the original authority of the agent. Neither was ratification in the sense in which we are here discussing it, involved in Arnold v. Insurance Co., 106 Tenn. 529, 61 S..W. 1032. There the plaintiff had requested a friend to obtain insurance for him. The policy thus obtained contained a clause that, if additional insurance was procured, it would void the policy. The owner, in ignorance of the fact that his friend had insured the property for him, took out another policy on the property. In a suit upon the policy procured by the friend it was held that the additional insurance defeated recovery.

In Insurance Co. v. Smithfield, 49 S. W. 412, there was no lack of authority on the part of the mayor to procure the insurance, but, as he was also the agent of the company, it was sought to avoid the policy on the ground of dual agency. Such fact being known to both parties, it was held that they were deemed to have ratified his acting in such dual capacity. The policy was not void on that account but at most was only voidable.

For the reason that the jury found that the insurance agents were authorized to cancel the binder in the North British & Mercantile Company, and to bind the plaintiff in error in lieu thereof, and that such finding is sustained by the evidence, the motion for rehearing herein is granted, our former judgment herein is set aside, and the judgment of the trial court is affirmed.

Motion granted. Judgment affirmed. ·

### On Motion for Rehearing of Plaintiff in Error.

[4] This case was not submitted to the jury on special issues. The issue as to the general custom of insurance agents under the facts as testified to by defendant in error and the insurance agent was not sub-

mitted in the charge of the court. The testimony as to such custom, though uncontradicted and not objected to, was not in response to the question asked. No reference to such custom was made in the pleadings, and it does not appear to have received any consideration in the trial of the case, nor in the original briefs of the parties hereto. For these reasons, we have concluded that this case should be reversed and remanded, in order that the jury might specially pass upon this issue.

The motion of plaintiff in error for a rehearing is accordingly granted, and the case is reversed and remanded for a new trial in accordance with our opinions herein.

Reversed and remanded.